# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

### SHERMAN DIVISION

| | | |
|---|---|---|
| **VICTOR HUGO SALDAÑO, #999203** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:08-cv-193** |
| | § | |
| **DIRECTOR, TDCJ-CID,** | § | |
| **Respondent.** | § | |

### MEMORANDUM OPINION AND
### ORDER OF DISMISSAL

Petitioner Victor Hugo Saldaño ("Saldaño"), an inmate confined in the Texas prison system, filed the above-styled and numbered petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Saldaño is challenging his capital murder conviction and death sentence imposed by the 199th Judicial District Court of Collin County, Texas, in Cause Number 199-80049-96, in a case styled *The State of Texas vs. Victor Hugo Saldano, aka Victor Rodriguez*. For reasons set forth below, the Court finds that the petition is not well-taken and that it will be denied.

## I. PROCEDURAL HISTORY OF THE CASE

Saldaño is in custody for murdering Paul King on November 20, 1995. He was sentenced to death on July 15, 1996. The Texas Court of Criminal Appeals affirmed the conviction and sentence. *Saldaño v. State*, No. AP-72,556 (Tex. Crim. App. Sept. 15, 1999). The United States Supreme Court remanded the case to the Texas Court of Criminal Appeals for further consideration in light of a confession of error by the Solicitor General of Texas. *Saldaño v. Texas*, 530 U.S. 1212 (2000). On remand, the Texas Court of Criminal Appeals once again affirmed the conviction. *Saldaño v. State*, 70 S.W.3d 873 (Tex. Crim. App. 2002). In federal habeas corpus proceedings before this Court, the

Director confessed error during the punishment phase of the trial and joined in Saldaño's request for relief; thus, the petition was granted. *Saldaño v. Cockrell*, 267 F.Supp. 2d 635 (E.D. Tex. 2003). The Fifth Circuit dismissed the Collin County District Attorney's attempt to appeal the judgment granting habeas relief. *Saldaño v. Roach*, 363 F.3d 545, 556 (5th Cir. 2004). The Supreme Court denied certiorari. *Roach v. Saldaño*, 543 U.S. 820 (2004).

A punishment retrial was conducted in November 2004. Based on the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article 37.071, the trial court sentenced Saldaño to death on November 18, 2004. The Texas Court of Criminal Appeals affirmed the conviction. *Saldaño v. State*, 232 S.W.3d 77 (Tex. Crim. App. 2007). The Supreme Court denied certiorari. *Saldaño v. Texas*, 552 U.S. 1232 (2008).

Saldaño has filed two post-conviction applications for a writ of habeas corpus in state court. The initial post-conviction application was filed on February 15, 2007. An evidentiary hearing was conducted on March 28, 2008. The state trial court issued 511 findings of fact and conclusions on law on April 21, 2008. The Texas Court of Criminal Appeals issued a written opinion adopting all but six of the findings and denied relief. *Ex parte Saldaño*, No. WR-41,313-04, 2008 WL 4727540 (Tex. Crim. App. Oct. 29, 2008). While the first application was pending, Saldaño filed another application, which was dismissed as an abuse of the writ. *Ex parte Saldaño*, No. WR-41,313-03, 2008 WL 152732 (Tex. Crim. App. Jan. 16, 2008).

Saldaño began the present proceedings on June 2, 2008. He filed a petition for a writ of habeas corpus (Dkt #21) on October 26, 2009. The Director filed an answer (Dkt #31) on July 9, 2010. Saldaño filed a reply (Dkt #37) on November 10, 2010. An amended reply (Dkt #39) was filed on November 17, 2010. Additional pleadings were filed with respect Saldaño's cumulative error claim (Dkt ## 46-50, 53 and 56). The case was transferred to the undersigned on May 17, 2016.

## II. FACTUAL BACKGROUND OF THE CASE

On November 20, 1995, Paul King drove his car to a Sack 'n Save grocery store in Plano, Texas. While walking to the entrance of the store, he was intercepted by Saldaño and co-defendant Jorge Chavez. Saldaño and Chavez forced King into his car, and they drove to a secluded country road. Saldaño shot King five times, took his watch and wallet, and left his body by the roadside. The kidnappers drove King's car for a short time before abandoning it. Saldaño was arrested within a few hours of the killing. The basic facts of the offense are not in dispute. *See* Petition at 8.

## III. GROUNDS FOR RELIEF

Saldaño presents the following grounds for relief:

1. By failing to guarantee that a *Lagrone*[1] examination by the State on Saldaño's mental decline would not be used by the State to prove future dangerousness, the trial court erroneously barred Saldaño's expert from testifying to support his motion to dismiss;

2. By failing to guarantee that a *Lagrone* examination by the State on Saldaño's mental decline would not be used to prove future dangerousness, the trial court erroneously permitted the State to introduce evidence of misconduct by a "psychologically decompensated" Saldaño while on death row;

3. The state courts' application of *Lagrone*, which prevented the presentation of significant mitigating evidence, violated the *Lockett*[2] doctrine;

4. Saldaño was denied effective assistance of counsel by trial counsel's failure to present critical mitigating evidence to the jury;

5. Saldaño was denied effective assistance of counsel by trial counsel's failure to preserve appellate issues relating to the application of the *Lagrone* decision;

6. Saldaño was denied effective assistance of counsel by trial counsel's failure to request a competency hearing;

---

[1]*Lagrone v. State*, 942 S.W.2d 602 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917 (1997).

[2]*Lockett v. Ohio*, 438 U.S. 586 (1978).

7.      Saldaño's punishment retrial denied him due process because it was conducted while he was incompetent;

8.      As applied to Saldaño, the legislative failure to address the time at which a defendant is to be examined for future dangerousness and the circumstances under which his potential for future dangerousness must be viewed, makes the future dangerousness requirement unconstitutionally vague;

9.      Under evolving standards of decency, Saldaño's death penalty trial and future execution would violate the 8th and 14th Amendments to the United States Constitution because of his mental illness;

10.     Saldaño's due process rights were violated by the trial court allowing the State to present evidence which the defense did not have a meaningful opportunity to rebut;

11.     The trial court's failure to allow evidence of the co-defendant's life sentence as mitigating evidence violated Saldaño's constitutional rights;

12.     The Texas death penalty statute is unconstitutional because it allows a jury unbridled discretion to determine who should live or die;

13.     The Texas death penalty statute, which instructs the jury that ten of them must agree in order to answer special issue no. 1 with a "no" answer, is unconstitutional because it fails to inform jurors that the effect of the jury's failure to reach a unanimous verdict on any issue at the punishment phase would result in a life sentence;

14.     The State's failure to provide meaningful appellate review of the sufficiency of the evidence to support the jury's verdict concerning mitigating evidence violates Saldaño's constitutional rights; and

15.     The cumulative effect of these constitutional violations denied Saldaño due process of law, even if no separate infraction by itself rose to that magnitude.

## IV.  STANDARD OF REVIEW

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow.  A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993).  Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92

F.3d 1385, 1404 (5th Cir. 1996), *cert. denied*, 520 U.S. 1242 (1997). In the course of reviewing state proceedings, a federal court does "not sit as a super state supreme court to review error under state law." *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007) (citations omitted), *cert. denied*, 552 U.S. 1314 (2008); *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983), *cert. denied*, 466 U.S. 984 (1984).

The petition was filed in 2009, thus review is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997). Under AEDPA, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas corpus relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). "By its terms § 2254 bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). AEDPA imposes a "highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation and internal quotation marks omitted). With respect to the first provision, a "state court decision is 'contrary to' clearly established federal law if (1) the state court 'applies a rule that contradicts the governing law' announced in Supreme Court cases, or (2) the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts." *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (en banc) (quoting *Mitchell v. Esparza*, 540

U.S. 12, 15-16 (2003)), *cert. denied*, 551 U.S. 1141 (2007). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). As such, "evidence later introduced in federal court is irrelevant." *Id.* at 184. "The same rule necessarily applies to a federal court's review of purely factual determinations under § 2254(d)(2), as all nine Justices acknowledged." *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011), *cert. denied*, 133 S. Ct. 105 (2012). With respect to § 2254(d)(2), the Supreme Court has found that a Texas court's factual findings are presumed to be sound unless a petitioner rebuts the "presumption of correctness by clear and convincing evidence." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (citing § 2254(e)(1)). The "standard is demanding but not insatiable; . . . [d]eference does not by definition preclude relief." *Id.* (citation and internal quotation marks omitted). More recently, the Supreme Court held that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citation omitted). The Supreme Court has explained that the provisions of AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Federal habeas corpus relief is not available just because a state court decision may have been incorrect; instead, a petitioner must show that a state court decision was unreasonable. *Id.* at 694. Finally, when a state court provides alternative reasons for denying relief, a federal court may not grant relief "unless *each* ground supporting the state court decision is examined and found to be unreasonable under AEDPA." *Wetzel v. Lambert*, 565 U.S. ___, ___, 132 S. Ct. 1195, 1199 (2012) (emphasis in original).

## V. DISCUSSION AND ANALYSIS

1.  **By failing to guarantee that a _Lagrone_ examination by the State on Saldaño's mental decline would not be used by the State to prove future dangerousness, the trial court erroneously barred Saldaño's expert from testifying to support his motion to dismiss.**

2.  **By failing to guarantee that a _Lagrone_ examination by the State on Saldaño's mental decline would not be used to prove future dangerousness, the trial court erroneously permitted the State to introduce evidence of misconduct by a "psychologically decompensated" Saldaño while on death row.**

3.  **The state courts' application of _Lagrone_, which prevented the presentation of significant mitigating evidence, violated the _Lockett_ doctrine.**

The first three grounds for relief concern _Lagrone v. State_, where the Texas Court of Criminal Appeals held that a trial court may "order criminal defendants to submit to a state-sponsored psychiatric exam on future dangerousness when the defense introduces, _or plans to introduce_, its own future dangerousness expert testimony." _Lagrone_, 942 S.W.2d at 611 (emphasis in original).[3] Saldaño had resided on death row for eight years by the time the punishment retrial began in 2004. His death row disciplinary record was presented to the jury. The record revealed that he had repeatedly engaged in acts of misconduct, which the Texas Court of Criminal Appeals described as follows:

> [Saldaño's] death-row misconduct includes assaulting and threatening to kill guards, throwing urine and feces at guards, and setting fires. A death-row guard testified that [Saldaño's] death row misconduct was a "daily thing."

_Saldaño_, 232 S.W.3d at 82 n.2. His misconduct "resulted in him being placed in the most restrictive and isolated level of death row." _Id._ The State presented the evidence of his misconduct to address the issue of future dangerousness.

---

[3]The Fifth Circuit subsequently denied Lagrone's request for a certificate of appealability when he challenged the order compelling him to submit to a state-sponsored psychiatric examination on the issue of his future dangerousness. _Lagrone v. Cockrell_, No. 02-10976, 2003 WL 22327519 (5th Cir. Sept. 2, 2003), _cert. denied_, 540 U.S. 1172 (2004).

The defense desired to counter the evidence of misconduct with testimony from Dr. Orlando Peccora, M.D., a prison psychiatrist who treated Saldaño "on well over 100 occasions" from "late 1997 or early 1998" until "early 2001." *Id.* at 82. Dr. Peccora apparently would have testified that the conditions on death row caused Saldaño to suffer from psychological deterioration and caused him to misbehave. *Id.* at 83. In the petition, Saldaño asserts that his condition had declined to the point where he appeared disheveled and unfocused, masturbated distractedly while the jury was in the room, stared inappropriately, and ultimately had to be restrained. "The State claimed, and the trial court agreed, that the defense could not present Peccora's testimony without first having [Saldaño] examined by a state psychiatric expert pursuant to [*Lagrone*]. [Saldaño] would not submit to a *Lagrone* examination, and Peccora's testimony was not presented." *Id.* Although Dr. Peccora did not testify, the defense submitted a declaration as to his findings.[4]

Saldaño claims that the trial court's failure to guarantee that a *Lagrone* examination by the State would not be used to prove future dangerousness (1) led the court to erroneously bar Dr. Peccora from testifying, (2) led the court to erroneously permit the State to introduce evidence of misconduct by a "psychologically decompensated" Saldaño while on death row, and (3) erroneously prevented the presentation of significant mitigating evidence in violation of the *Lockett* doctrine.

The Texas Court of Criminal Appeals found that Saldaño did not preserve his *Lagrone* claims for appeal. *Saldaño*, 232 S.W.3d at 88. The Court's detailed discussion about the factual basis of its legal conclusion included the following:

> The record reflects that the *Lagrone* issue first arose rather late in the proceedings during a November 5, 2004, hearing on a written motion that [Saldaño] had filed on October 21, 2004, in the middle of individual voir dire. . . . [Saldaño]

---

[4]Dr. Peccora's declaration was included in the Clerk's Record ("CR") at pages 1579-1583 and as Defendant's Exhibit 6 as an offer of proof. It was also attached to the petition as Exhibit A.

claimed at the November 5, 2004, hearing on this motion that the State should not be permitted to seek another death sentence or, alternatively, not be permitted to use any evidence of [Saldaño's] death-row misconduct after his 1996 trial because of the procedurally defaulted claim of prosecutorial misconduct at [Saldaño's] 1996 trial. [Saldaño] evidently claimed that he would not have misbehaved on death row but for this "misconduct" by the State. To support these claims, [Saldaño] stated that he intended to introduce Peccora's testimony at the hearing to show [Saldaño's] mental decline on death row since his 1996 trial. . . .

The State claimed that [Saldaño] should not be permitted to present Peccora's testimony without the State having an opportunity to have [Saldaño] examined by a state psychiatric expert, and the trial court agreed.

[THE COURT]: Let me get something up front here.

I have had a chance to read, during some of that testimony, that *Lagrone* case, and I believe the State has a right to have [Saldaño] examined if the State's—if the defense is going to offer the evidence along the lines set out in [Peccora's] affidavit, which I've now reread.

The defense would not agree to a *Lagrone* examination "for the purposes of this pretrial motion" because of the risk that [Saldaño's] "examination to a psychiatrist of the State could actually be used against him at trial."

[DEFENSE LAWYER # 1]: Well, let me—let me make this even more clear.

The reason that we're putting that into evidence at this point is, we are not going to allow [Saldaño] to be looked at by a psychiatrist.

[THE COURT]: I gotcha.

[DEFENSE LAWYER # 1]: He'll invoke his Fifth Amendment right.

[DEFENSE LAWYER # 2]: Your Honor, may I add?

I'd like to point out that we're being placed in a situation risking that [Saldaño's] testimony—[Saldaño's] examination to a psychiatrist of the State could actually be used against him at trial. Faced with that possibility, we can't have the—our client examined for the purposes of this pretrial motion. It's just a risk that we can't run.

The record, therefore, reflects that [Saldaño] took the position at this November 5, 2004, hearing that any evidence obtained by the State during a *Lagrone* examination might be used by the State on any issue at the punishment hearing (including future dangerousness). At this point, [Saldaño] had not alerted the trial court to any claim

that the trial court should guarantee that a *Lagrone* examination be limited to rebutting any testimony by Peccora on [Saldaño's] mental decline and not to prove future dangerousness.

On Friday, November 12, 2004, the State rested its punishment hearing case-in-chief during which the State had presented evidence of [Saldaño's] death-row misconduct. On Monday morning, November 15, 2004, [Saldaño] filed another written motion requesting that the trial court reconsider its earlier ruling on the *Lagrone* issue. In this November 15, 2004, motion, [Saldaño] offered for the first time to submit to a *Lagrone* examination. [Saldaño] also specifically alerted the trial court for the first time to the claim that this *Lagrone* examination should be limited to rebutting any testimony by Peccora on [Saldaño's] mental decline. . . .

[Saldaño's] November 15, 2004, motion contained no claim that the trial court's earlier ruling on the *Lagrone* issue was effectively preventing [Saldaño] from presenting constitutionally relevant mitigating evidence to the jury in the form of Peccora's testimony concerning [Saldaño's] mental decline. And, [Saldaño] made no claim that he wanted to present Peccora's testimony to the jury at the punishment hearing. . . .

The trial court held a hearing on [Saldaño's] November 15, 2004, motion on the morning that it was filed. At this hearing, the defense agreed with the trial court that it was requesting the trial court to reconsider its earlier ruling on the *Lagrone* issue. . .

The State claimed at this hearing that the defense was "only stalling and asking for a delay in tactics." The State also stated that it wanted to make it "crystal clear" that it had never requested the trial court to bar Peccora's testimony, and that, in the pretrial context in which Peccora's testimony was initially offered at the November 5, 2004, hearing, the State had requested a *Lagrone* examination "to present controverting evidence if the defense presented that evidence." The State also requested the trial court to deny [Saldaño's] motion because it was, among other things, "untimely."

The trial court expressed the view that a *Lagrone* examination "would probably open everything up" about "anything relevant to [Saldaño's] mental state, including future dangerousness, which is the defense concern." . . . The trial court ultimately denied [Saldaño's] request to limit a *Lagrone* examination to rebutting Peccora's testimony on [Saldaño's] mental decline. [Saldano] made no claim that this effectively prevented him from presenting constitutionally relevant mitigating evidence in the form of Peccora's testimony. [Saldaño] again would not submit to a *Lagrone* examination, and he did not offer Peccora's testimony at the punishment hearing or any other hearing.

*Saldaño*, 232 S.W.3d 83-88 (footnotes omitted).

The Texas Court of Criminal Appeals found that the record was clear that Saldaño did not alert the trial court of the claim that it should guarantee that a *Lagrone* examination be limited to rebutting Dr. Peccora's testimony on mental decline until after the State had rested its case-in-chief. *Id.* at 88. The Court accordingly held that it "was too late for [Saldaño] to have preserved for appeal the claims presented" in his first two grounds. *Id.*; *See* Tex. R. App. Proc. 33.1(a)(1)(A) (to preserve error for appeal, complaining party must timely present claim to trial court with sufficient specificity to make the trial court aware of complaint). The Court further found that Saldaño completely failed to preserve for appeal his allegation that he was prevented from presenting relevant mitigating evidence because he did not bring the claim in either motion before the trial court or during the hearings on the respective motions. *Id.*

The Director argues that Saldaño's *Lagrone* claims are procedurally barred in light of the holding by the Texas Court of Criminal Appeals. Under the procedural default doctrine, federal courts are precluded from granting habeas relief where the last state court to consider the claims raised by the petitioner expressly and unambiguously based its denial of relief on an independent and adequate state law procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir. 1999). When a state court explicitly relies on a procedural bar, a state prisoner may not obtain federal habeas relief absent a showing of cause for the default and actual prejudice. *Coleman*, 501 U.S. at 750. A petitioner who fails to satisfy the cause and prejudice standard may still be entitled to habeas corpus relief if he can show that the imposition of the procedural bar would constitute a fundamental miscarriage of justice; in other words, that he was actually innocent of the crime. *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992); *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).

The Fifth Circuit has consistently held that the Texas contemporaneous objection rule constitutes an adequate and independent ground that procedurally bars federal habeas review of a petitioner's claims. *Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir.), *cert. denied*, 551 U.S. 1193 (2007); *Cardenas v. Dretke*, 405 F.3d 244, 249 (5th Cir. 2005), *cert. denied*, 548 U.S. 925 (2006); *Dowthitt v. Johnson*, 230 F.3d 733, 752 (5th Cir. 2000) ("[T]he Texas contemporaneous objection rule is strictly or regularly applied evenhandedly to the vast majority of similar claims, and is therefore an adequate procedural bar."), *cert. denied*, 532 U.S. 915 (2001). Saldaño disputes the finding by the Texas Court of Criminal Appeals that he did not preserve the *Lagrone* claims, but the finding is supported by the record. Saldaño has not shown cause and actual prejudice for the default nor a fundamental miscarriage of justice. His *Lagrone* claims are procedurally barred.

The *Lagrone* claims must be rejected for the additional reason that they involve nothing more than the application of state law. The Supreme Court has repeatedly stated that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67-68. In the course of reviewing state proceedings, a federal court does "not sit as a super state supreme court to review error under state law." *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007), *cert. denied*, 552 U.S. 1314 (2008). When the *Lagrone* case went to federal court, the district court found that the rule established by the state court did not unreasonably apply federal law and the Fifth Circuit found that the district court's assessment of the claim was "neither debatable nor wrong." *Lagrone*, 2003 WL 22327519, at *10. Federal courts have subsequently likewise found that the *Lagrone* rule is neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court. *See, e.g., Brewer v. Quarterman*, 475 F.3d 253, 257 (5th Cir. 2006), *cert. denied*, 552 U.S. 834 (2007).

The rule established by the Texas Court of Criminal Appeals in *Lagrone* is a state-law question, and the application of the rule is not a federal issue. Federal habeas relief is unavailable on the first three grounds for relief.

> **4.** **Saldaño was denied effective assistance of counsel by trial counsel's failure to present critical mitigating evidence to the jury.**

Saldaño next argues that his attorneys were ineffective for failing to present critical mitigating evidence to the jury regarding his mental health for fear that the State would rebut the evidence. It was noted that neither the jury nor the trial court heard any testimony that could have explained Saldaño's bizarre behavior. Saldaño made the argument that no outside observer - aware of the omitted mental health evidence - would believe that Saldaño's trial produced a just result. He admitted that in light of the overwhelming evidence presented by the State regarding his behavior while already on death row, and his own grotesque behavior during the trial, there was little doubt that the jury would find him to be a danger in the future. He added that given the overwhelming probability that the jury would have answered the future dangerousness question in the affirmative, there was no risk in presenting the mental health evidence. Without the benefit of an explanation, by way of mental illness, the jury was without the tools to do anything but answer the mitigation question in the negative.

In support of the claim, Saldaño complains that counsel did not present critical evidence from the following three sources: (1) the testimony of his mother, Lidia Guerrero; (2) the testimony of his sister, Ada Saldaño; and (3) certain documentary evidence. It was noted that Guerrero testified on behalf of her son during the punishment phase of the first trial and was ready and available to testify at the punishment retrial. She was set to testify about her son's background and upbringing. Saldaño notes that his sister, Ada Saldaño, was interviewed by the defense mitigation expert, Dr. Kelly Goodness. She would have provided additional testimony about her brother's background and

upbringing. However, due to the late term of her pregnancy, she was unable to travel and be present during the punishment retrial, but she would have come voluntarily had the trial been postponed or would have been willing to give testimony by deposition. Saldaño observes that there is no indication in the record that his attorney filed either a motion for a continuance or a motion to take a deposition in order to secure his sister's testimony. Saldaño finally complains that documents submitted during his first trial were not submitted. Documents regarding his upbringing in Argentina included school records, birth records, records of religious confirmation, and Naval school records. His school records purportedly showed a student who was regular in attendance, well behaved, and diligent enough in his studies to be promoted from one grade to the next.

Saldaño's attorneys during the punishment retrial were Richard Franklin, John Tatum and Rick Harrison. At the close of the punishment retrial, Franklin testified *in camera* as to why he did not call Lidia Guerrero as a witness. 31 RR 96-100.[5] He testified that Guerrero was interviewed for four hours on November 14, 2004. She wanted to make an issue of her son's mental health. She insisted on telling the jury that he was mentally ill, that he could not function, and that he was incompetent. The attorneys told her that if she presented such testimony, then the State would call psychiatrists and psychologists to testify that Saldaño had an antisocial personality disorder and that he was not mentally ill. Moreover, there would be testimony that he was faking his mental illness for the purpose of getting drugs and other medication. Guerrero told the attorneys that she did not care if other psychiatrists and psychologists testified because she wanted all of the evidence to be "in the open." 31 RR 96-97. She believed that "her statement that he was mentally ill would probably carry the day, because she was

---

[5] "RR" refers to the trial transcript from the punishment retrial, preceded by the volume number and followed by the page number(s).

his mother." 31 RR 97. Franklin testified that her insistence on testifying that Saldaño was mentally

ill was the reason that she was not called as a witness:

> So that's why we didn't call her as any kind of witness, because we were afraid we
> would open up the mental-illness question, and the State would respond with at least
> three psychologists and one psychiatrist who would testify about the antisocial
> disorder.

31 RR 98. He added that Dr. Kelly Goodness, his mental expert, has a doctorate in psychology and

that she interviewed Saldaño and was of the opinion that he was competent. 31 RR 99. When

questioned by the trial court, Franklin testified that the defense team explored the issue of mental

retardation and that there was "no evidence of even borderline mental retardation." *Id.* He

acknowledged that the trial court provided experts early on in the proceedings in order to make that

determination. 31 RR 100.

The issue of ineffective assistance of counsel was fully developed during the state habeas

corpus proceedings in *Ex parte Saldaño*, No. WR-41,313-04. Franklin provided an affidavit in

response to allegations of ineffective assistance of counsel. SHCR-03 at 1124-25.[6] Rick Harrison

likewise provided an affidavit. *Id.* at 1122-23. Franklin explained his strategy during the course of

the punishment retrial as follows:

> The four questions of trial counsel contained in the Court's Order dated 8/31/07
> will be answered in light of the fact that [Saldaño] was confined on death row for eight
> years and committed various crimes and bad acts while so confined which were
> admissible at his re-trial. Further, [Saldaño] was unable to develop a mitigation theory
> of diminished capacity or outright insanity due to his illegal confinement on death row
> because of trial court rulings.
>
> 1)   [Saldaño's] mother could not testify because she insisted his
>      confinement on death row made him mentally ill. This testimony
>      would have been rebutted by the State's psychiatrist. There was no
>      indication that Ada Saldaño would have testified any differently
>      regarding his mental status. She had stated to Dr. Goodness that her

[6] "SHCR" refers to the state habeas transcript followed by the volume and page number(s).

brother was not on drugs, was intelligent, was raised in good homes and always did his homework and housework without complaint. She never came up with anything that was clearly mitigating.

2)     There was no reason to take the deposition of Ada. There was nothing she could testify about that would help under the facts available to the State in the re-trial.

3)     All of this evidence was introduced at the first trial. It had no significance then and would have even less at the re-trial. The fact that [Saldaño] was born and baptized, went to school, and joined the navy could not explain or mitigate his throwing feces at prison guards as well as all of the other bad acts committed by [Saldaño] while on death row.

4)     The only strategy left by court rulings was to demonstrate that the prison system could contain [Saldaño] and keep him from harming others. That is its function. The co-defendant was used to show that [Saldaño] was intoxicated at the time of the offense and they had no intention of hurting anyone.

*Id.* at 1124-25.

Mr. Harrison provided essentially the same discussion in his affidavit. He specifically noted that records from the prison psychiatric ward described Saldaño as "having antisocial personality disorder, being a manipulator, and faking symptoms to gain drugs. We had two doctors examine Saldaño three different times, up until the trial began, and none would term him insane or suffering from mental illness." *Id.* at 1122. His responses to the four questions asked of counsel were essentially the same responses as provided by co-counsel Franklin. *Id.* at 1122-23.

The state habeas court conducted a writ hearing after the affidavits were submitted. The attorneys for both sides presented oral arguments based on the evidence that had been gathered. The trial court then issued 511 findings of fact and conclusions of law. SHCR-04 at 1244-1339. Findings 18-175 relate to the present ground for relief. The findings relating to trial counsel's decision not to call Guerrero to testify include the following:

23.     The Court finds that Guerrero attended [Saldaño's] re-sentencing trial and was available to testify there.  Writ Exhibit D at 10-11.

24.     The Court finds that trial counsel decided not to call Guerrero to testify at [Saldaño's] 2004 re-sentencing trial.

25.     The Court finds that after they decided not to call Guerrero as a witness, [Saldaño's] trial counsel stated the reasons for their decision on the record.  31 RR 96-98.

26.     The Court finds that trial counsel's stated reasons for deciding not to call Guerrero to testify as a witness are credible, and the Court accepts those stated reasons as true.

38.     The Court finds that [Saldaño's] trial counsel decided not to call Guerrero to testify because they believed her testimony would have opened up the issue of [Saldaño's] mental health and the State would have been able to respond with witnesses who would have testified about [Saldaño's] antisocial personality disorder.  31 RR 98; Franklin Affidavit at 1; Harrison Affidavit at 1.

39.     The Court finds that, at the time trial counsel decided not to open the door to the issue of [Saldaño's] mental health, the State had not offered [Saldaño's] prison records or any other evidence that [Saldaño] had an antisocial personality disorder or was malingering.

40.     The Court finds that it was reasonable for [Saldaño's] trial counsel to conclude that if Guerrero testified she would carry out her stated intentions of testifying about [Saldaño's] mental state.

41.     The Court finds that it was reasonable for [Saldaño's] trial counsel to conclude that, if Guerrero testified about [Saldaño's] mental state, the jury would hear rebuttal evidence that [Saldaño] had an antisocial personality disorder and had been "faking," "drug seeking," "feigning psychiatric symptoms for secondary gain," "malingering," and engaging in "manipulative behavior" while in prison.

42.     The Court finds that evidence that [Saldaño] had an antisocial personality disorder and was malingering could have damaged him by corroborating the State's claim that [Saldaño] was a future danger.

43.     The Court finds that evidence that [Saldaño] had an antisocial personality disorder and was malingering could have damaged [Saldaño] by weighing heavily against and undermining any claim that he possessed qualities that mitigated against a sentence of death.

44.     The Court finds from the evidence that [Saldaño] would "fake" mental illness symptoms even to his mother who had traveled from Argentina to support him

17

in a trial that had already caused deep emotional anguish (Writ Exhibit E at 3), the jury could have concluded that [Saldano] was unfeeling and depraved. And that conclusion could have been damaging to [Saldano].

47.     The Court finds that the State's anticipated rebuttal to Guerrero's testimony could have been highly damaging to [Saldaño].

48.     The Court finds that the State's potential rebuttal evidence was relevant to both the issue of future dangerousness and the issue of mitigation.

49.     The Court finds that it was reasonable for [Saldaño's] trial counsel to choose for the jury not to hear the damaging rebuttal evidence.

50.     The Court finds that even Guerrero's "mitigating" testimony contained a potential to harm [Saldaño].

51.     The Court finds that, considering the possibility of significant harm from the State's rebuttal evidence along with the mixed effect of Guerrero's testimony, trial counsel's decision not to call Guerrero to testify at [Saldaño's] re-sentencing trial was a reasonable strategic decision based on full knowledge of the relevant facts.

59.     The Court finds that [Saldaño] has failed to prove by the preponderance of the evidence that his trial counsel were deficient for failing to call Guerrero to testify at his re-sentencing trial.

61.     The Court concludes that [Saldaño] has failed to meet the deficiency prong of *Strickland*.[7]

62.     The Court finds that, if Guerrero had testified at [Saldaño's] 2004 re-sentencing trial, she would have provided the same testimony she provided at [Saldaño's] 1996 trial. Writ 7-8.

63.     The Court finds that even with Guerrero's testimony at [Saldaño's] 1996 trial, [Saldaño] was sentenced to death. 21 RR-96 308.

66.     The Court finds that Guerrero's testimony was even less likely to result in a life sentence at [Saldano's] 2004 re-sentencing trial since it would have opened the door to highly damaging rebuttal evidence that was relevant to both the issue of future dangerousness and mitigation.

67.     The Court finds that [Saldaño] has failed to prove by a preponderance of the evidence that there is a reasonable probability that, if Guerrero had testified,

---

[7] *Strickland v. Washington*, 466 U.S. 668 (1984).

the jury would have concluded that the balance of the aggravating and mitigating circumstances did not warrant death.

68.     The Court concludes that [Saldaño] has failed to meet the harm prong of *Strickland*.

SHCR-04 at 1249-57.

The findings relating to trial counsel's decisions concerning the use of Ada Saldaño as a witness include the following:

82.     The Court finds that [Saldaño] has not provided evidence that Ada Saldaño would have testified to different mitigation evidence than Guerrero would have testified to or that Ada Saldaño could have testified in more detail than Guerrero. Franklin Affidavit at 1.

83.     The Court finds that Ada Saldaño could not attend the trial because she was in the advanced stages of pregnancy, and she informed [Saldaño's] trial counsel of that fact thirty days before trial was set to begin. Writ Exhibit E at 9.

84.     The Court finds that [Saldaño] claims his trial counsel were deficient because they did not request a continuance of his 2004 re-sentencing trial until Ada Saldaño could attend. Writ at 13.

87.     The Court finds that until three days before the re-sentencing trial ended, when counsel interviewed Guerrero and realized they could not take the risk of putting her on the stand (31 RR 96), counsel had another witness - Guerrero - who could have provided the same testimony as Ada Saldaño about [Saldaño's] family background and childhood.

88.     The Court finds that Ada Saldaño's testimony would have been cumulative of testimony that would have been presented by Guerrero. Franklin Affidavit at 1.

89.     The Court finds that it likely would have been futile for trial counsel to seek a continuance prior to trial to secure Ada Saldaño's testimony.

90.     The Court finds that [Saldaño] has failed to prove by a preponderance of the evidence that his trial counsel were deficient for failing to seek a continuance prior to trial to secure Ada Saldaño's testimony.

91.     The Court concludes that trial counsel was not deficient for choosing not to take the futile action of seeking a continuance prior to trial to secure Ada Saldaño's testimony.

92.    The Court concludes that [Saldaño] has failed to meet the deficiency prong of *Strickland*.

100.    The Court finds that, if Ada Saldaño had testified at [Saldaño's] re-sentencing trial, she would have testified in accordance with what she told Kelly Goodness. Writ Exhibit E at 9.

101.    The Court finds that Ada Saldaño would not have provided evidence that was clearly mitigating. Franklin Affidavit at 1; Harrison's Affidavit at 1.

107.    The Court finds that [Saldaño] has failed to prove by a preponderance of the evidence that his trial counsel were deficient for failing to seek a continuance during trial to secure Ada Saldaño's testimony.

109.    The Court concludes that [Saldaño] has failed to meet the deficiency prong of *Strickland*.

117.    The Court finds that [Saldaño] has failed to prove by a preponderance of the evidence that his trial counsel were deficient for failing to depose Ada Saldaño.

118.    The Court finds that trial counsel were not deficient for failing to depose Ada Saldaño.

119.    The Court concludes that [Saldaño] has failed to meet the deficiency prong of *Strickland*.

120.    The Court concludes that [Saldaño's] trial counsel did not render ineffective assistance by failing to depose Ada Saldaño.

124.    The Court finds that, if background evidence Ada Saldaño would have testified to did not result in a life sentence in the 1996 trial it likely would not have resulted in a life sentence in a trial that presented even stronger reasons for imposition of a penalty of death.

126.    The Court finds that [Saldaño] has failed to prove by a preponderance of the evidence that there is a reasonable probability that, if Ada Saldaño had testified, the jury would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.

128.    The Court finds that [Saldaño] has failed to meet the harm prong of *Strickland*.

129.    The Court finds that, as to this claim of ineffective assistance, [Saldaño] has failed to prove both the deficiency and the harm prongs of *Strickland*.

130.    The Court concludes that [Saldaño's] trial counsel did not render ineffective assistance of counsel by choosing not to seek a continuance of [Saldaño's]

trial, before or during trial, to secure Ada Saldaño's testimony or by failing to depose Ada Saldaño.

SHCR-04 at 1259-67.

The findings relating to trial counsel's decision not to submit certain documentary evidence

include the following:

132. The Court finds that at [Saldaño's] 1996 trial his trial counsel introduced into evidence: report cards from [Saldaño's] first through eighth grades; his birth certificate; his certificates of baptism and confirmation; a certificate from the Argentine Navy Mechanic School from 1989; and a letter from the Argentine Consulate General stating [Saldaño] did not have any police records in Argentina. 20 RR-96 239, 256, 274.

134. The Court finds that the introduction of those documents at [Saldaño's] 1996 trial did not result in him receiving a life sentence.

135. The Court finds that trial counsel in [Saldaño's] 2004 re-sentencing did not seek to admit those documents.

136. The Court finds that trial counsel in [Saldaño's] 2004 re-sentencing trial chose a different strategy of seeking to establish that [Saldaño] was intoxicated at the time he killed Paul King and diminishing his responsibility in the murder. 31 RR 36-41, 48; Franklin Affidavit at 2; Harrison Affidavit at 2.

137. The Court finds that trial counsel had [Saldaño's] co-defendant Chavez brought from the Texas Department of Corrections, where he is serving a life sentence. 29 RR 1-4.

138. The Court finds that Chavez did not testify at [Saldaño's] 1996 trial.

139. The Court finds that trial counsel elicited testimony from Chavez that the day of the murder the men drank six bottles of beer and smoked a "fistful" of crack cocaine rocks. 30 RR 21-23, 53.

142. The Court finds that in his closing argument, counsel described the co-defendants' day as "[t]hey smoke that morning; smoke crack. It's gone. They bought 90 bucks worth the night before; it's gone. Last rock, whatever. Grab some beer; steal those; drink those." 31 RR 41. Counsel told the jury, "I submit to you, folks, if somebody smokes cracks [sic] and drinks those beers in the morning, they're going to be stoned bejesus." 31 RR 38.

143. The Court finds that trial counsel urged the jury to consider evidence of intoxication as mitigating, saying "it goes against the grain [the prosecutor]

tries to portray of a cold-blooded killer that just did it methodically and well-thought out." 31 RR 38, 39.

149. The Court finds that trial counsel told the jury that except for an attempted robbery four days before the murder, [Saldaño] had "[n]othing in a [sic] America; nothing in South America; nothing in Mexico. Nothing." 31 RR 35. Another time he told the jury, "If Victor Saldaño had an extensive criminal record a mile long, which some of you, I'm sure, expected, I could understand [the State seeking the death penalty]. . . . We don't have that. He's got no criminal record until that day. Zero." 31 RR 31.

151. The Court finds that, in preparing for [Saldaño's] 2004 re-sentencing trial, trial counsel could look back to the 1996 trial with the benefit of hindsight. Trial counsel could see that a trial strategy dependent on showing the jury that in [Saldaño's] early years he did "normal" things like go to school, get baptized and confirmed, and join the military was insufficient to persuade the jury to give [Saldaño] a life sentence. Moreover, counsel likely knew they could not rely simply on re-using the mitigation evidence from the 1996 trial because the State now possessed even more evidence of [Saldaño's] future dangerousness. And they also had available [Saldaño's] co-defendant Chavez, who did not testify at the first trial.

152. The Court finds that it was reasonable for [Saldaño's] counsel to develop a different trial strategy than the one that had failed in 1996.

153. The Court finds that it was reasonable to develop a new strategy around the new resource they had in co-defendant Chavez and to take advantage of his ability to present mitigating evidence of [Saldaño's] intoxication and diminished responsibility as a follower of Chavez with limited intent of tying King up.

154. The Court finds that trial counsel's strategy in [Saldaño's] 2004 re-sentencing trial was reasonable and that it was competently executed.

155. The Court finds that it was reasonable for trial counsel to emphasize only their new strategy and not to dilute it by introducing evidence supporting a different strategy.

156. The Court finds that [Saldaño's] trial counsel were not deficient for choosing the reasonable strategy of emphasizing [Saldaño's] intoxication and diminished responsibility for the murder.

157. The Court finds that [Saldaño] has failed to prove by a preponderance of the evidence that his trial counsel were deficient for choosing not to admit the documentary evidence that was used at [Saldaño's] 1996 trial.

158.   The Court finds that [Saldaño's] trial counsel were not deficient for choosing not to admit the documentary evidence that was used at [Saldaño's] 1996 trial.

159.   The Court concludes that [Saldaño] has failed to meet the deficiency prong of *Strickland*.

163.   The Court finds that, if the documents have any mitigating value, it is relatively insignificant when compared to the mitigating evidence elicited from Chavez.

164.   The Court finds that admitting the documents would therefore not have resulted in a life sentence even when added to Chavez's testimony.

165.   The Court finds that [Saldaño] has failed to prove by a preponderance of the evidence that the absence of any particular document resulted in a sentence of death in his 2004 re-sentencing trial.

170.   The Court concludes that [Saldaño] has not proved by a preponderance of the evidence that he would have received a life sentence if trial counsel had introduced the documentary evidence, or any particular document, in his [ ] 2004 re-sentencing trial.

172.   The Court finds that [Saldaño] has failed to meet the harm prong of *Strickland*.

173.   The Court finds that, as to this claim of ineffective assistance, [Saldaño] has failed to prove both the deficiency and the harm prongs of *Strickland*.

174.   The Court concludes that [Saldaño's] trial counsel did not render ineffective assistance of counsel by choosing not to introduce the documentary evidence, or any particular document, from [Saldaño's] 1996 trial.

175.   The Court concludes that this ground of ineffective assistance of counsel should be denied.

SHCR-04 at 1267-1274. The Texas Court of Criminal Appeals subsequently considered and adopted all of the aforementioned findings of fact and conclusions of law in denying relief. *Ex parte Saldaño*, 2008 WL 4727540, at *1.

Saldaño argues that his attorneys were ineffective for failing to present critical mitigating evidence to the jury, in violation of *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and a petitioner bears the burden of proving both prongs. 466 U.S. at 687. Under the first prong, a petitioner must show that counsel's performance was deficient. *Id.*

23

To establish deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, . . ." *Id.* at 689 (citations omitted). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). Under the second prong, the petitioner must show that his attorney's deficient performance resulted in prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

The Supreme Court recently discussed the difficulties associated with proving ineffective assistance of counsel claims as follows:

> "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. 356, 371, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland,* 466

> U.S., at 689–690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.,* at 689, 104 S. Ct. 2052; see also *Bell v. Cone,* 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell,* 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland,* 466 U.S., at 690, 104 S. Ct. 2052.

*Richter*, 562 U.S. at 105. In a separate opinion issued on the same day, the Court reiterated that the "question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from the best practices or most common custom." *Premo v. Moore*, 562 U.S. 115, 122 (2011) (citing *Strickland*, 466 U.S. at 690).

In the context of § 2254(d), the deferential standard that must be accorded to counsel's representation must also be considered in tandem with the deference that must be accorded to state court decisions, which has been referred to as "doubly" deferential. *Richter*, 562 U.S. at 105. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* "If the standard is difficult to meet, that is because it was meant to be." *Id.* at 102. *Also see Morales v. Thaler*, 714 F.3d 295, 302 (5th Cir.), *cert. denied*, 134 S. Ct. 393 (2013).

Saldaño's ineffective assistance of counsel claim concerns the use of mitigating evidence. In a capital sentencing proceeding, "defense counsel has the obligation to conduct a "reasonably substantial, independent investigation' into potential mitigating circumstances." *Neal v. Puckett*, 286 F.3d 230, 236-37 (5th Cir. 2002) (quoting *Baldwin v. Maggio*, 704 F.2d 1325, 1332-33 (5th Cir. 1983)). *See also Woods v. Thaler*, 399 F. App'x 884, 891 (5th Cir. 2010), *cert. denied*, 563 U.S. 991 (2011). In assessing whether counsel's performance was deficient, courts look to such factors as what

counsel did to prepare for sentencing, what mitigation evidence he had accumulated, what additional "leads" he had, and what results he might reasonably have expected from those leads. *Neal*, 286 F.3d at 237. The reasonableness of counsel's investigation involves "not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). "[C]ounsel should consider presenting . . . [the defendant's] medical history, educational history, employment and training history, family and social history, prior adult and juvenile correctional experience, and religious and cultural influences." *Id.* at 524 (citing ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases § 11.8.6, at 133 (1989)). The Supreme Court stated in *Wiggins* that the "investigation into mitigating evidence should comprise efforts to discover *all reasonably available* mitigating evidence." *Id.*

In the present case, Saldaño is not complaining that his attorneys failed to take steps to discover all reasonably available mitigating evidence; instead, the focus of his complaint concerns trial counsels' decisions about which evidence to submit to the jury. He complains that counsel did not offer known critical mitigating evidence that could have been provided by his mother, sister and the documents that were offered at his 1996 trial. His claim is essentially a complaint about the trial strategy employed by his attorneys. The Supreme Court fully discussed the approach that must be employed regarding trial strategy in *Strickland.* The Court observed that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland,* 466 U.S. at 690-91. Federal courts "will not question a counsel's reasonable strategic decisions." *Bower v. Quarterman*, 497 F.3d 459, 470 (5th Cir. 2007), *cert. denied*, 553 U.S. 1006 (2008). In applying

*Strickland*, the Fifth Circuit has held that "the failure to present a particular argument or evidence is presumed to have been the result of strategic choice." *Taylor v. Maggio*, 727 F.2d 341, 347-48 (5th Cir. 1984). Because of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

The state trial court thoroughly discussed trial counsel's decisions regarding Guerrero, Ada Saldaño and the documents presented during the 1996 trial in terms of trial strategy. The strategy employed in 1996 did not work, and Saldaño was sentenced to death. Trial counsel thus chose to employ a different strategy this time around. The trial court appropriately found that it was reasonable for trial counsel to employ a different strategy during the 2004 punishment retrial. It was also reasonable for trial counsel to utilize co-defendant Chavez, who was not available in 1996, in an effort to show that Saldaño was intoxicated and had diminished responsibility at the time of the offense with the limited intent of tying up King. Guerrero's anticipated testimony, on the other hand, would have undermined this trial strategy. Her testimony would have permitted the State to offer rebuttal evidence that Saldaño had an antisocial personality disorder, that he engaged in feigned psychiatric symptoms for secondary gain, that he engaged in manipulative behavior and that he was a malingerer. The trial court reasonably found that the State's anticipated rebuttal to Guerrero's testimony could have been highly damaging to Saldaño. With respect to Ada Saldaño, the state trial court reasonably found that trial counsel was not ineffective for failing to make a futile request of seeking a continuance. *See Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002), *cert. denied*, 538 U.S. 926 (2003); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). The trial court ultimately found that trial counsel's

strategy in the 2004 punishment retrial was "reasonable and that it was competently executed." The trial court found that trial counsel's choices did not amount to deficient representation, that Saldaño had not shown harm, and that he did not prove that his attorneys were ineffective. The Texas Court of Criminal Appeals adopted these findings.

Saldaño argues in his reply to the answer that the defenses were not mutually exclusive, but Saldaño's desire to have a specific defensive theory presented does not satisfy his burden of showing ineffective assistance of counsel. *Johnson v. Cockrell*, 301 F.3d 234, 239 (5th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689), *cert. denied*, 538 U.S. 1001 (2003). The "failure to present mitigating evidence, if based on informed and reasoned practical judgment, is well within the range of practical choices not to be second-guessed under *Strickland*." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (internal quotation marks and citation omitted), *cert. denied*, 509 U.S. 921 (1993). Trial counsel's decisions regarding Guerrero, Ada Saldaño, and the documents submitted at the 1996 trial were based on informed and well-reasoned practical judgment, which may not be second-guessed. Saldaño has not shown that his attorneys' representation in this matter was deficient or that he was prejudiced by such deficient representation. He failed to satisfy his burden of proving ineffective assistance of counsel as required by *Strickland*. Saldaño also failed to show, as required by 28 U.S.C. § 2254(d), that the State court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. Moreover, he failed to overcome the "doubly" deferential standard that must be accorded to his trial attorneys in light of both *Strickland* and § 2254(d). *See Richter*, 562 U.S. at 105. The fourth ground for relief lacks merit and should be denied.

**5. Saldaño was denied effective assistance of counsel by trial counsel's failure to preserve appellate issues relating to the application of the *Lagrone* decision.**

Saldaño argues in his fifth ground for relief that he was denied effective assistance of counsel by trial counsel's failure to preserve the *Lagrone* issues for appeal. Stated differently, he is linking his first three grounds for relief to an ineffective assistance of counsel claim. He claims that the first three grounds for relief were procedurally defaulted due to counsel's failure to timely and properly preserve the issues for appellate review.

In his answer, the Director argues that Saldaño cannot show that he was prejudiced as a result of trial counsel's failure to preserve these issues. He further argues that the ground for relief is procedurally barred. He notes that Saldaño first raised this particular ineffective assistance of counsel claim in his second state habeas application, which the Texas Court of Criminal Appeals dismissed based on an independent state procedural bar. Indeed, Saldaño acknowledges in his petition that the Texas Court of Criminal Appeals dismissed his second application for a writ of habeas corpus for the following reason: "We have reviewed the application and find that the allegations do not satisfy the requirements of Article 11.071 § 5. Accordingly, the application is dismissed as an abuse of the writ. Art. 11.071 § 5(c)." *Saldaño*, 2008 WL 152732, at *1.

The procedural default doctrine was discussed in conjunction with Saldaño's first three grounds for relief. As was previously noted, under the procedural default doctrine, federal courts are precluded from granting habeas relief where the last state court to consider the claims raised by the petitioner expressly and unambiguously based its denial of relief on an independent and adequate state law procedural ground. *Coleman*, 501 U.S. at 729-30. When a state court explicitly relies on a procedural bar, a state prisoner may not obtain federal habeas relief absent a showing of cause for the default and actual prejudice or a fundamental miscarriage of justice. Dismissals pursuant to abuse of writ principles have regularly been upheld as a valid state procedural bar foreclosing federal habeas review.

*See Moore v. Quarterman*, 534 F.3d 454, 463 (5th Cir. 2008); *Hughes v. Quarterman*, 530 F.3d 336, 342 (5th Cir. 2008), *cert. denied*, 556 U.S. 1239 (2009); *Coleman v. Quarterman*, 456 F.3d 537, 542 (5th Cir. 2006), *cert. denied*, 549 U.S. 1343 (2007). Most recently, the Fifth Circuit reiterated that Texas' abuse-of-the writ doctrine is an "independent and adequate state procedural rule." *Reed v. Stephens*, 739 F.3d 753, 774 (5th Cir.), *cert. denied*, 135 S. Ct. 435 (2014). In *Reed*, the federal courts rejected as procedurally barred petitioner's ineffective assistance of counsel claims raised in his third state habeas application that had been dismissed by the Texas Court of Criminal Appeals "as an abuse of the writ." *Id.*

Saldaño's present ineffective assistance of counsel claim was similarly dismissed by the Texas Court of Criminal Appeals "as an abuse of the writ." Saldaño attempts to establish cause by arguing that there was no basis for bringing the claim in the first state habeas petition. He notes that the finding that the *Lagrone* claims were not preserved was raised *sua sponte* by the Texas Court of Criminal Appeals on direct appeal, which was after the first habeas petition was filed; thus, the factual basis for the claim "simply did not exist." The Director correctly observes that the exact same argument was presented to the Texas Court of Criminal Appeals in Saldaño's subsequent application for a writ of habeas corpus, which was dismissed as an abuse of the writ. Indeed, the written decision by the Texas Court of Criminal Appeals clearly identified the ineffective assistance of counsel claim and dismissed it as an abuse of the writ. *Saldaño*, 2008 WL 152732, at *1. The Director persuasively argues that, for this reason, Saldaño has not established cause. He also correctly observed that Saldaño failed to show prejudice or a fundamental miscarriage of justice.

Saldaño argues in his reply to the answer that the ground for relief is not barred by an independent or adequate state procedural ground. He asserts that the bar does not apply when a state court decision is ambiguous. *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983). He correctly

observed that the Fifth Circuit has held that "the boilerplate dismissal by the CCA of an application for abuse of the writ is uncertain" if it is unclear whether the decision was based on state law or federal law. *Ruiz v. Quarterman*, 504 F.3d 523, 527 (5th Cir. 2007). However, the written decision by the Texas Court of Criminal Appeals in this case makes it clear that Saldaño was attempting to raise an ineffective assistance of counsel claim based on "trial counsel's failure to preserve certain issues raised in his direct appeal," which did not satisfy the subsequent application rules of "Article 11.071 § 5." *Saldaño*, 2008 WL 152732, at *1. The decision is not ambiguous. The dismissal of the application was based on state law. The distinction that Saldaño is attempting to make lacks merit.

Saldaño has not satisfied his burden of showing cause and prejudice or a fundamental miscarriage of justice. Until just recently, there would been no further inquiry into this ground for relief. However, the Supreme Court opened the door slightly for a showing of cause and prejudice to excuse the default in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013). In *Martinez*, the Supreme Court answered a question left open in *Coleman*: "whether a prisoner has a right to effective counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." 132 S. Ct. at 1315. These proceedings were referred to as "initial-review collateral proceedings." *Id.* The Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 1320. *Strickland* standards apply in assessing whether initial-review habeas counsel was ineffective. *Id.* at 1318.

The Supreme Court extended *Martinez* to Texas in *Trevino*. Although Texas does not preclude appellants from raising ineffective assistance of trial counsel claims on direct appeal, the Court held

that the rule in *Martinez* applies because "the Texas procedural system - as a matter of its structure, design, and operation - does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal." *Trevino*, 133 S. Ct. at 1921. The Court left it to the lower courts to determine on remand whether Trevino's claim of ineffective assistance of counsel was substantial and whether his initial state habeas attorney was ineffective. *Id.*

The Fifth Circuit summarized the rule announced in *Martinez* and *Trevino* as follows:

> To succeed in establishing cause to excuse the procedural default of his ineffective assistance of trial counsel claims, [petitioner] must show that (1) his underlying claims of ineffective assistance of trial counsel are "substantial," meaning that he "must demonstrate that the claim[s] ha[ve] some merit," *Martinez*, 132 S. Ct. at 1318; and (2) his initial state habeas counsel was ineffective in failing to present those claims in his first state habeas application. *See id.*; *Trevino*, 133 S. Ct. at 1921.

*Preyor v. Stephens*, 537 F. App'x 412, 421 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 2821 (2014). "Conversely, the petitioner's failure to establish the deficiency of either attorney precludes a finding of cause and prejudice." *Sells v. Stephens*, 536 F. App'x 483, 492 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1786 (2014). The Fifth Circuit recently employed this approach once again in *Reed*, 739 F.3d at 774. The Fifth Circuit has also reiterated that a federal court is barred from reviewing a procedurally defaulted claim unless a petitioner shows both cause and prejudice. *Hernandez v. Stephens*, 537 F. App'x 531, 542 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1760 (2014). To show actual prejudice, a petitioner "must establish not merely that the errors at a trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* (citations omitted) (emphasis in original).

In the present case, trial counsel wanted to counter the evidence of Saldano's misconduct in prison with testimony from Dr. Peccora, who would have discussed Saldaño's mental decline. Counsel filed a motion regarding such evidence on October 21, 2004. A hearing was conducted on November 5, 2004, in the middle of individual voir dire. The State claimed, and the trial court agreed,

that the defense could not present Dr. Peccora's testimony without first having Saldaño examined by a state psychiatric expert pursuant to *Lagrone*. At that time, trial counsel faced a dilemma. He had a choice of deciding whether to place Dr. Peccora on the stand, which would require Saldaño to be examined by a state psychiatrist, or forego placing Dr. Peccora on the stand. Based on the dilemma posed by *Lagrone*, he chose to forego placing Dr. Peccora on the stand and not having Saldaño examined. The choice he made was reasonable because of the potential damaging testimony that could have been submitted by the State if Saldaño had been examined by a state psychiatrist. His decision was within the scope of reasonable trial strategy that cannot be second-guessed. On November 15, 2004, after the State rested it's case-in-chief, Saldaño's attorneys reasonably renewed their motion and asked the trial court to reconsider the decision regarding *Lagrone*. Counsel tried to limit the use of the evidence that would be obtained in an examination by a state psychiatric expert, but his efforts did not succeed. The trial court would not reverse itself and again observed that a *Lagrone* examination would open up everything and anything about Saldaño's mental state. Trial counsel acted reasonably in his efforts to handle this matter. There was certainly no indication of incompetence. The facts of this case do not give rise to an inference that the representation provided by Saldaño's attorneys was deficient.

The Court observes that *Lagrone* presents a difficult dilemma for defenses attorneys. Faced with the dilemma, defense attorneys regularly make the same choice as Saldaño's attorneys, as noted by the Fifth Circuit as follows:

> That was a strategic decision. One of [Petitioner's] attorneys stated to the trial court, "Based on my experience in the past, there's probably no way on God's green earth that we're going to do anything to allow the State to examine our client with one of their own experts. If that's an indication of what our intent is, then so be it."

*Yowell v. Thaler*, 442 F. App'x 100, 102 n.1 (5th Cir. 2011). *See also Mays v. Director, TDCJ-CID*, No. 6:11-CV-135, 2013 WL 6677373, *13 (E.D. Tex. Dec. 18, 2013); *Crutsinger v. Thaler*, No. 4:07-CV-703-Y, 2012 WL 369927, at *5 (N.D. Tex. Feb. 6, 2012); *Galloway v. Quarterman*, No. 3:04-

CV-0234-G, 2008 WL 5091748, at *10 (N.D. Tex. Dec. 3, 2008). The problem is compounded by the requirement that a criminal defendant submit to a *Lagrone* psychiatric examination in order to preserve it for appellate review. *Hernandez v. State*, 390 S.W.3d 310, 322 (Tex. Crim. App. 2012). Nonetheless, as was noted in *Yowell*, a defense attorney's choice in this type of situation is a strategic decision, and Saldaño does not have a basis for a potentially successful ineffective assistance of counsel claim based on his attorneys' reasoned strategic decisions in this case regarding *Lagrone*.

Saldaño's fifth ground for relief is procedurally barred. He has not shown cause and prejudice or a fundamental miscarriage of justice in order to overcome the bar. The decisions set forth in *Martinez* and *Trevino* do not help because his underlying claim of ineffective assistance of trial counsel lacks any merit.

6. **Saldaño was denied effective assistance of counsel by trial counsel's failure to request a competency hearing.**

7. **Saldaño's punishment retrial denied him due process because it was conducted while he was incompetent.**

Grounds for relief six and seven concern whether Saldaño should have been afforded a competency hearing. In ground number six, Saldaño alleges that his attorneys were ineffective for failing to request a competency hearing. In ground number seven, he alleges that the trial court denied him due process because the punishment retrial was conducted while he was incompetent. He opined that the competency issue simmered throughout the trial. The record reveals that the trial court was advised on the first day of testimony that Saldaño was masturbating in court, and the trial court made references to bizarre incidents that had occurred during voir dire. Nonetheless, his attorneys did not ask for a competency hearing, and the trial court failed to *sua sponte* order a competency hearing. Saldaño submitted an affidavit from Dr. Robert E. Cantu, M.D.,[8] who expressed the opinion that

---

[8] Petitioner's Exhibit J.

Saldaño was incompetent at the time of the 2004 retrial. Dr. Cantu added that he examined Saldaño in June of 2006 and concluded that he was suffering from psychosis. It was noted that the frequency of Saldaño's inexplicable courtroom behavior led the prosecution to voice its concern on the fourth day of testimony. Saldaño observes that Dr. Peccora stated in his affidavit that he suffered from Schizoaffective Disorder. Saldaño stresses that it is axiomatic that a criminal defendant must be mentally competent to stand trial. *Drope v. Missouri*, 420 U.S. 162, 171 (1975). He argues that there was not any conceivable tactical reason for counsels' decision not to request a competency hearing nor any reason why the trial court failed to conduct a competency hearing.

The record reveals that the issue of Saldaño's competency was fully addressed during both the 2004 punishment retrial and the state habeas proceedings. The issue was initially raised in court during the individual questioning of prospective jurors. 5 RR 224. Trial counsel noted Saldaño's bizarre behavior and asked for a psychiatric examination out of an abundance of caution. *Id.* at 224-225. The trial court agreed and observed that the issue would have to be developed if the examination revealed that Saldaño was incompetent. *Id.* at 227. The trial court subsequently questioned the trial attorneys about the psychiatric examination. 7 RR 106-108. During the course of the trial, Saldaño was examined by two doctors a total of three times, and each time he was found to be competent. 7 RR 106-08; 27 RR 1; 31 RR 99; Harrison Affidavit at 1.

In addition to having Saldaño examined by doctors, trial counsel called two bailiffs on November 11, 2004 to testify regarding their observations about Saldaño's behavior outside of court. Chief Bailiff Brian Burnett expressed the opinion that Saldaño acted normally outside of court and was "just playing games." 27 RR 7. Bailiff Eric Palmer Giles, a transport officer, testified that Saldaño knew what was going on, that he was coherent and that he was competent. 27 RR 10-11. On

November 17, 2004, trial counsel raised the issue once again and informed the trial court that Dr. Kelly Goodness found that he was competent. 31 RR 99.

During the state habeas proceedings, Rick Harrison, co-counsel for Saldaño, addressed this issue in his affidavit as follows:

> [T]here were a number of records and reports generated from the prison psychiatric ward by various doctors who described Saldaño as having antisocial personality disorder, being a manipulator, and faking symptoms to gain drugs. We had two doctors examine Saldaño three different times, up until the trial began, and none would term him insane or suffering from mental illness. In fact, they echoed the findings of the prison doctors.

SHCR-03 at 1122. Prison records provided to trial counsel revealed that prison doctors found that Saldaño had antisocial personality disorder and was "faking," "drug seeking," "feigning psychiatric symptoms for secondary gain," "malingering," and engaging in "manipulative behavior."

With respect to the claim that trial counsel was ineffective for failing to request a competency hearing, the state habeas court's findings included the following:

414. The Court finds that during his trial [Saldaño's] trial counsel had him examined for competency by two doctors a total of three times, and each time [Saldaño] was found competent. 7 RR 106-108; 27 RR 1; 31 RR 99; Harrison Affidavit at 1.

415. The Court finds that, toward the end of trial, [Saldaño's] trial counsel had two bailiffs testify that [Saldaño] was not incompetent but, based on their observations of [Saldaño] outside the courtroom, [Saldaño] was simply acting out in the courtroom. 27 RR 4-5, 7, 10-11.

416. The Court finds that counsel's discussions with [Saldaño] concerning his courtroom appearance were met with understanding (3 RR 2-3; 4 RR 3-5), and counsel was able to observe [Saldaño's] engagement with the trial judge and understanding of the legal process throughout trial. 2 RR 3-5; 7 RR 10; 14 RR 2-6 (discussions about the translator); 4 RR 201; 5 RR 133-35, 221; 10 RR 106; 11 RR 160; 15 RR 88; 20 RR 112; 22 RR 228 (interactions during voir dire); 4 RR 203; 6 RR 121, 218; 7 RR106; 8 RR 165; 10 RR 132; 11RR 241-43; 12 RR 251; 15 RR 91-92; 17 RR 92, 94; 18 RR 147; 19 RR 126; 20 RR 140-41; 22 RR 228; 22 RR 251-52; 24 RR 143; 27 RR 262; 30 RR 201 (end-of-day discussions with the court); 13 RR 180-81; 27 RR 16-17 ([Saldaño's] prolonged apology).

417. The Court finds that counsel had access to, and was aware of the contents of, [Saldaño's] prison records that are replete with notations about [Saldaño] "faking" his mental illness, "malingering," and engaging in "manipulative" behavior for secondary gain. Writ Exhibit N; Appendix A to State's Answer.

418. The Court recognizes that trial counsel is not ineffective for failing to make futile requests. *See Chandler*, 182 S.W.3d at 356.

419. The Court finds that, before testimony began in the trial, [Saldaño's] counsel had obtained an expert opinion that [Saldaño] was competent to stand trial, and counsel obtained the same opinion two more times throughout the trial. 7 RR 106-108; 27 RR 1; 31 RR 99; Harrison Affidavit at 1.

420. The Court finds that, knowing that [Saldaño] *was* competent, it was wholly reasonable for counsel not to request a competency hearing where they could only prevail if they could prove that [Saldaño] was *not* competent.

421. The Court finds that a request for a competency hearing at [Saldaño's] re-sentencing trial would likely have been futile.

422. The Court finds that counsel should not be required to request a hearing on an issue that has already been determined adversely to the position they would have to take at the hearing.

423. The Court finds that trial counsel was not ineffective for failing to request a competency hearing where they would not have prevailed. *See Jackson v. State*, No. 05-04-00623-CR, 2005 WL 1022517, at *2 (Tex. App. - Dallas May 3, 2005, no pet.) (declining to find counsel ineffective for failing to file a motion for a competency hearing where there was no evidence in the record raising the issue of incompetency); *Brown v. State*, 129 S.W.3d 762, 767 (Tex. App. - Houston [1st Dist.] 2004, no pet.) (claim of ineffective assistance of counsel fails when no evidence in the record demonstrated the defendant was incompetent or insane).

424. The Court finds that the general record of [Saldaño's] trial evidences that [Saldaño] was competent to stand trial.

425. The Court finds that [Saldaño] has not proved by a preponderance of the evidence that he was incompetent to stand trial.

427. The Court finds that trial counsel is not deficient for not being able to secure an opinion from the experts that was contrary to their findings. *See Dowthitt v. Johnson*, 230 F.3d 733, 745 n.10 (5th Cir. 2000) (noting counsel is not required to continue searching for experts "until they find an expert willing to provide more beneficial testimony on their behalf").

428. The Court finds that [Saldaño] has failed to meet his burden of proving by a preponderance of the evidence that his trial counsel were deficient for failing to request a competency hearing.

429. The Court finds that [Saldaño] has failed to meet his burden of proving by a preponderance of the evidence that he was harmed by trial counsel's failure to request a hearing, where he could not have prevailed.

430. The Court finds that trial counsel were not deficient, and [Saldaño] was not harmed, by counsel's failure to request a hearing.

SHCR-04 at 1322-25.

The state habeas court also issued findings concerning Saldaño's claim that he was denied due process when he was tried while incompetent. As would be expected, many of the findings duplicated the findings with respect to Saldaño's ineffective assistance of counsel claim. The salient, non-repetitive findings include the following:

261. The Court finds that [Saldaño's] trial counsel had [Saldaño] examined for competency by two different doctors a total of three times. Harrison Affidavit at 1.

262. The Court finds that trial counsel contacted a psychiatrist the first week of October 2004 to have [Saldaño] examined as soon as possible. 7 RR 108-108; *see also* 15 RR 90 (on October 25, 2004 the court approved a bill for a doctor counsel had hired).

263. The Court finds that trial counsel made the trial court aware of this examination. 7 RR 106-108; 15 RR 90.

264. The Court finds that [Saldaño] was examined for competency the morning of November 11, 2004 for a third time and was found competent. 27 RR 1; 31 RR 90.

265. The Court finds that trial counsel made the trial court aware of this examination. 27 RR 1; 31RR 99.

266. The Court finds that each time [Saldaño] was examined for competency, the doctors found him competent. 31 RR 99; Harrison Affidavit at 1 (neither doctor "would term [Saldaño] insane or suffering from mental illness").

267.	The Court finds, therefore, that the doctors who examined [Saldaño] for competency "echoed the findings of the prison doctors." Harrison Affidavit at 1.

268.	The Court finds that the prison doctors found that [Saldaño] had an antisocial personality disorder and was "faking," "drug seeking," "feigning psychiatric symptoms for secondary gain," "malingering," and engaging in "manipulative behavior." Writ Exhibit M; Appendix A to State's Answer.

270.	The Court finds that at no time prior to or during [Saldaño's] trial did [Saldaño's] trial counsel assert that [Saldaño] did not have a sufficient present ability to consult with his counsel with a reasonable degree of rational understanding or a rational as well as factual understanding of the proceedings against him.

274.	The Court finds that throughout his trial, [Saldaño] declined to assert that he was incompetent to stand trial or to request a competency inquiry or hearing.

276.	The Court notes that at the hearing [on November 5, 2004] [Saldaño's] counsel informed the trial judge that they were not raising the issue of [Saldaño'] competency: "we're not arguing he's not competent to stand trial; we're only arguing a significant decline in cognitive ability and emotional stability" (23 RR 6); "[w]e're also not arguing competence either" (23 RR 13); "I also wanted to make it clear that [defense psychiatrist Dr. Peccora] would not be testifying that Victor Saldaño is psychotic today or incompetent to stand trial." 23 RR 132-33.

277.	The Court finds that, two days before the trial ended, the trial judge noted on the record that as of that date, neither [Saldaño], [Saldaño's] counsel, nor any other witness had given the judge anything that made him question whether [Saldaño] was competent to stand trial. 29 RR 6.

278.	The Court finds that the trial judge's statement is correct and accepts it as true.

279.	The Court finds that two days before the trial ended, the court agreed with the State that [Saldaño] was competent:

> I agree . . . that I have seven - now seven weeks that I've been in the same courtroom with Mr. Saldaño on a nearly daily basis, that, other than some behavior on his part which I don't think was in his best interest, and neither did his own attorney, he and I have had conversations about what's going on, and *I haven't had any belief based on any of his responses that he was not understanding me and*

> *communicating with me . . .* long and short of it is, *I don't have any reason to raise the question of his competency right now.*

29 RR 7 (emphasis added).

299. The Court finds that [Saldaño] was not incompetent but was simply acting out in the courtroom.

302. The Court finds that [Saldaño's] behavior did not reflect incompetency but, rather, a disregard for the authority of the court and the proceedings.

SHCR-04 at 1291-1297. The state habeas court went on to thoroughly discuss Texas law concerning the issue of competency and the trial court's obligations in assessing whether a criminal defendant is incompetent to stand trial. It was particularly noted that "where a defendant has been examined and found competent to stand trial, the trial court does not abuse its discretion in failing to conduct a competency hearing." *Id.* at 1305. The Texas Court of Criminal Appeals subsequently adopted all of these findings. The only findings that were not adopted were those where the state habeas court found that Saldaño forfeited his competency claim by failing to raise it on direct appeal, which were findings 310, 312, 313, 316, 317 and 318. *Ex parte Saldaño*, 2008 WL 4727540, at *1.

The legal analysis of the sixth and seventh grounds for relief should start with the proposition noted by Saldaño that it is axiomatic that a criminal defendant must be mentally competent to stand trial. *Drope*, 420 U.S. at 171. In federal cases, the test of incompetence "is whether a criminal defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - and whether he has a rational as well as factual understanding of the proceedings against him." *Id.* at 172 (internal quotation marks and citation omitted). Most recently, the Supreme Court reiterated the basic principle that the criminal trial of an incompetent defendant violates due process. *Ryan v. Gonzales*, 133 S. Ct. 696, 703 (2013). This basic principle is likewise contained in Tex. Code Crim. Proc. Ann. art. 46B.003.

The Fifth Circuit has made it clear that a defense attorney's failure to investigate a criminal defendant's competency to stand trial constitutes ineffective assistance of counsel, particularly if counsel knew that the defendant had a history of mental problems. *Bouchillon v. Collins*, 907 F.2d 589, 597 (5th Cir. 1990). Moreover, trial "judges must depend to some extent on counsel to bring [such] issues into focus." *Id.* (citing *Drope*, 420 U.S. at 176-77). In the present case, Saldaño's attorneys were concerned about his competency due to his behavior. They appropriately raised the issue with the trial court and obtained permission to have Saldaño examined. They sought to have Saldaño examined out of an abundance of caution. Saldaño was examined by two doctors a total of three times, and each time he was found to be competent to stand trial. The Fifth Circuit has opined that "the Sixth Amendment does not require counsel to continue searching until they find an expert willing to provide more beneficial testimony on their behalf." *Dowthitt*, 230 F.3d at 745 n.10. Saldaño's attorneys fulfilled their duty to pursue the issue of competency when it appeared necessary. Moreover, the findings by these two doctors were consistent with the conclusions expressed by prison doctors. It is further noted that Saldaño's condition was never in such a state that trial counsel felt compelled to inform the trial court that Saldaño did not have a sufficient present ability to consult with them with a reasonable degree of rational understanding or a rational as well as factual understanding of the proceedings against him. Finally, in order to fully develop the record on this issue, Saldaño's attorneys went so far as to put on testimony from the bailiffs regarding his out of court behavior. Saldaño's trial attorneys were not deficient with respect to the issue of his competency. They fully explored and developed this issue. Saldaño now argues that his attorneys should have filed a motion for a competency hearing, but they were not ineffective for failing to request a competency hearing where they could not have prevailed. Counsel was not required to make frivolous or futile motions.

*Johnson*, 306 F.3d at 255; *Koch*, 907 F.2d at 527. This ineffective assistance of counsel claim is devoid of merit.

The ineffective assistance of counsel claim should be denied for the additional reason that Saldaño has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Saldaño also presents his competency claim in terms of trial error. He argues that he was denied due process because the trial was conducted while he was incompetent. In the state habeas corpus proceedings, the claim was discussed in terms of whether the trial court should have *sua sponte* conducted a competency hearing. On habeas, a petitioner may collaterally attack his conviction by showing that "the facts are sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to his mental competency at the time of trial." *Dunn v. Johnson*, 162 F.3d 302, 306 (5th Cir. 1998) (internal quotations omitted), *cert. denied*, 526 U.S. 1092 (1999); *Carter v. Johnson*, 131 F.3d 452, 460 (5th Cir. 1997), *cert. denied*, 523 U.S. 1099 (1998). The threshold burden is "extremely heavy." *Johnson v. Estelle*, 704 F.2d 232, 238 (5th Cir. 1983), *cert. denied*, 465 U.S. 1009 (1984). A criminal defendant is entitled to a competency hearing if there is a "bona fide doubt" as to his competence. *Pate v. Robinson*, 383 U.S. 375, 385 (1966); *McInerney v. Puckett*, 919 F.2d 350, 351 (5th Cir. 1990) (Under *Pate*, a trial court should inquire into a criminal defendant's competency *sua sponte* if the evidence raises a bona fide doubt as to his competency.). The legal question a reviewing court must ask is whether the trial judge received "information which, objectively considered, should reasonably have raised a doubt about defendant's competency and

alerted him to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense." *Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir. 1980) (internal citations omitted); *see Medina v. California*, 505 U.S. 437, 438 (1992) (The key is whether the defendant had "the capacity to participate in his defense and understand the proceedings against him."). The Fifth Circuit has held that a trial court does not violate *Pate* if a petitioner fails to raise a bona fide doubt as to his competency and, thus, does not hold a competency hearing. *Chenault v. Stynchcombe*, 546 F.2d 1191, 1193 (5th Cir.), *cert. denied*, 434 U.S. 878 (1977).

In the present case, trial counsel raised the issue of Saldaño's competence out of an abundance of caution. The trial court, in turn, appropriately approved the request to have Saldaño examined and placed Saldaño's attorneys on notice that the issue may have to be developed further depending on the findings of the doctors. Saldaño was examined by two doctors a total of three times, and each time he was found to be competent to stand trial. The trial court also had access to prison records that revealed that prison doctors similarly expressed the opinion that Saldaño simply had an antisocial personality disorder and was "faking,' "drug seeking," "feigning psychiatric symptoms for secondary gain," "malingering," and engaging in "manipulative behavior." During the punishment retrial, the trial court regularly made inquiries concerning whether Saldaño was competent. The trial court questioned both trial counsel and Saldaño. Based on Saldaño's responses to his questions, the trial judge expressed the opinion that he had no reason to conclude that Saldaño was not understanding him or unable to communicate with him. The trial judge expressed the opinion that there was no evidence before him that made him question whether Saldaño was competent to stand trial. The record reveals that the trial court complied with its obligation to inquire into Saldaño's competency. The evidence did not raise a bona fide doubt as to his competency. Moreover, Saldaño has not shown that the evidence before the trial court positively, unequivocally and clearly generated a real, substantial and

legitimate doubt as to his mental competency at the time of trial. Consequently, the trial court was not obligated to hold a competency hearing. The state habeas court reasonably found that Saldaño was not incompetent and that he was simply acting out in the courtroom, which was the product of his disregard of the authority of the court and the proceedings. Saldaño has not shown, as required by 28 U.S.C. § 2254(d), that the State court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. *See Roberts v. Dretke*, 381 F.3d 491, 498 (5th Cir. 2004), *cert. denied*, 544 U.S. 963 (2005). Saldaño has not shown that he is entitled to relief on his sixth and seventh grounds for relief.

> **8.** **As applied to Saldaño, the legislative failure to address the time at which a defendant is to be examined for future dangerousness and the circumstances under which his potential for future dangerousness must be viewed, makes the future dangerousness requirement unconstitutionally vague.**

In his eighth ground for relief, Saldaño argues that the statute that provides for the future dangerous special issue is unconstitutionally vague as it applies to him. Texas law requires juries in capital murder cases to answer special issues during the punishment phase of a trial, which will determine whether the defendant will receive a death sentence or life imprisonment. Article 37.071 § 2(b)(1) of the Texas Code of Criminal Procedure establishes that in order for the death penalty to be imposed, the jury must find that "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." This is the future dangerousness special issue. The jury in the present case was charged in accordance with the statutory provision, and the jury answered in the affirmative.

Saldaño argues that Article 37.071 § 2(b)(1) is unconstitutionally vague as applied to him. He stressed that the statute did not address the period of time in which he should have been evaluated for future dangerousness. He noted that this issue does not arise in a typical death penalty case. In his case, however, his mental health deteriorated during the eight year period of time he spent on death row. He asserts that he was a totally different person in 2004, as compared to 1996. In support of his claim, he observes that the Supreme Court established that a state capital sentencing system must (1) rationally narrow the class of death-eligible defendants; and (2) permit a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime. *Gregg v. Georgia*, 428 U.S. 153 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ); *Furman v. Georgia*, 408 U.S. 238 (1972) (per curiam). Saldaño argued that the "future dangerousness requirement is no longer capable of reasoned application to [him] because it requires reference to his present condition."

The Texas Court of Criminal Appeals rejected the claim on direct appeal. *Saldaño*, 232 S.W.3d at 91 (citing *Jurek v. Texas*, 428 U.S. 262, 274-76 (1976); *Sells v. State*, 121 S.W.3d 748, 767-68 (Tex. Crim. App. 2003); *Murphy v. State*, 112 S.W.3d 592, 606 (Tex. Crim. App. 2003)). The Supreme Court subsequently denied his petition for a writ of certiorari.

In analyzing this ground for relief, the Court initially notes that the presentation of the claim is internally inconsistent. At times, Saldaño argues that the statute is vague as to the period of time in which he should have been evaluated for future dangerousness. At other times, he complains that the application of the statute required reference to his present condition, in other words, as it was in 2004. In either case, the ground for relief lacks merit.

Saldaño's assertion that Article 37.071 § 2(b)(1) is unconstitutionally vague as applied to him ignores clearly established case law by both the Supreme Court and Fifth Circuit. The vagueness

concept used in capital cases is a term of art. The Supreme Court observed that a State's capital punishment "system could have standards so vague that they would fail adequately to channel the sentencing decision patterns of juries with the result that a pattern of arbitrary and capricious sentencing like that found unconstitutional in *Furman* could occur." *Gregg*, 428 U.S. at 195 n.46. States must take steps to make sure that jury instructions are not so vague in their application so as to lead to arbitrary and capricious results. The special issues used in the Texas capital punishment scheme have repeatedly been upheld by the Supreme Court despite allegations of vagueness. *See Jurek*, 428 U.S. at 272; *Franklin v. Lynaugh*, 487 U.S. 164 (1988); *Johnson v. Texas*, 509 U.S. 350, 373 (1993). The Fifth Circuit has likewise rejected arguments that Texas' future dangerousness special issue is unconstitutionally vague. *Scheanette v. Quarterman*, 482 F.3d 815, 827-28 (5th Cir. 2007); *Turner*, 481 F.3d at 299-300; *Leal v. Dretke*, 428 F.3d 543, 553 (5th Cir. 2005), *cert. denied*, 547 U.S. 1073 (2006). The Supreme Court observed that the issues posed in sentencing proceedings in Texas are not vague since they have a "common-sense core of meaning." *Pulley v. Harris*, 465 U.S. 37, 49 n.10 (1984); *Milton v. Procunier*, 744 F.2d 1091, 1095-96 (5th Cir. 1984), *cert. denied*, 471 U.S. 1030 (1985).

Saldaño's claim that the future dangerousness special issue is vague as applied to him because of his special circumstances is disingenuous. The statute is abundantly clear. It distinguishes between evidence of a defendant's conduct up until the time of the commission of an offense and his subsequent conduct. Since Saldaño had been found guilty of capital murder, the jury was free "to consider a myriad of factors to determine whether death is the appropriate punishment." *Tuilaepa v. California*, 512 U.S. 967, 979 (1994) (citations omitted). The jury had "unbridled discretion." *Id.* The jury was entitled to consider all of the evidence available in evaluating Saldaño's future dangerousness, both aggravating and mitigating. Despite Saldaño's claims to the contrary, the jury was perfectly capable

of employing a reasoned application of the statute to him.  The thrust of Saldaño's claim is that he did not want the jury to be informed about his misconduct while confined in prison.  He does not believe that it was fair for the jury to consider this evidence because he allegedly spent "eight years wrongfully incarcerated on death row," particularly since the State confessed error.  This line of argument is inconsistent with *Tuilaepa*.  The issue of whether it was fair for the jury to consider this evidence has nothing to do with whether the statute is unconstitutionally vague.  The statute is clear.  Saldaño is trying to create an artificial distinction where none exists.  The claim lacks merit.

Finally, the Director correctly argued that relief is foreclosed by the anti-retroactivity doctrine of *Teague v. Lane*, 489 U.S. 288, 316 (1989).  *See also Rowell v. Dretke*, 398 F.3d 370, 377-78 (5th Cir.), *cert. denied*, 546 U.S. 848 (2005).  Shortly after the present petition was filed, the Fifth Circuit cited *Teague* in rejecting yet another attack on the future dangerousness special issue as vague, saying "[b]ecause no court has previously found the wording of Texas's future dangerousness special issue to be unconstitutionally vague, [Petitioner] is not entitled to relief."  *Kerr v. Thaler*, 384 F. App'x 400, 404 (5th Cir. 2010), *cert. denied*, 562 U.S. 1142 (2011).  *Teague* likewise applies in this case.  Saldaño has not shown that he is entitled to relief based on his eighth ground for relief.

> **9. Under evolving standards of decency, Saldaño's death penalty trial and future execution would violate the 8th and 14th Amendments to the United States Constitution because of his mental illness.**

The ninth ground for relief focuses on Saldaño's argument that he should not be executed because of mental illness.  Alternatively, he argues that his death sentence should not be carried out because he is incompetent.  He once again refers to the evidence of his mental decline while confined on death row.  He correctly observes that the Supreme Court has created categorical exceptions from execution:  *Atkins v. Virginia*, 536 U.S. 304 (2002) (prohibits the execution of the mentally retarded); *Roper v. Simmons*, 543 U.S. 551 (2005) (prohibits the execution of people who committed capital

offenses before their eighteenth birthday); *Ford v. Wainwright*, 477 U.S. 399, 409 (1986) (prohibits the execution of the insane). He acknowledges that other than incompetency, he does not presently fall within any categorical exemption from execution. He argues, however, that Eighth Amendment jurisprudence in this area is rapidly evolving and that it should encompass mental illness.

Both issues were fully developed during the state habeas corpus proceedings. With respect to the issue of whether mental illness renders a defendant ineligible for execution, the state habeas court made the following finding:

> 201. The Court recognizes that federal courts and other state courts have similarly rejected the argument. *See In re Neville*, 440 F.3d 220, 221 (5th Cir. 2006) (finding that *Atkins* did not exempt mentally ill inmates from execution); *In re Woods*, 155 Fed. Appx. 132, 136 (5th Cir. 2005) (same); *Haynes v. Quarterman*, No. H-05-3424, 2007 WL 268374, slip. op. at 8 (S.D. Tex. Jan. 25, 2007); *State v. Johnson*, 207 S.W.3d 24, 50-51 (Mo. 2006) (noting "both federal and state courts have refused to extend *Atkins* to mental illness situations"); *State v. Hancock*, 840 N.E.2d 1032, 1059-60 (Ohio 2006).

> 220. The Court finds and concludes that [Saldaño's] claim that he is categorically immune from execution is without merit and should be denied.

SHCR-04 at 1278, 1281. The Texas Court of Criminal Appeals subsequently adopted the finding by the state habeas court. Saldaño has not shown that, as required by 28 U.S.C. § 2254(d)(1), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. The Court would add that the Fifth Circuit's more recent decisions have regularly rejected claims that the mentally ill may not be executed. *ShisInday v. Quarterman*, 511 F.3d 514, 521 (5th Cir. 2007), *cert. denied*, 555 U.S. 815 (2008); *Turner v. Epps*, 460 F. App'x. 322, 328 (5th Cir.), *cert. denied*, 132 S. Ct. 1306 (2012); *Ripkowski v. Thaler*, 438 F. App'x 296, 303 (5th Cir. 2011),

*cert. denied*, 132 S. Ct. 1544 (2012). Relief is unavailable in light of clearly established case law in this Circuit.

The second issue raised by the ground for relief is the claim that the State may not carry out the execution because Saldaño is incompetent. The state habeas court recognized that incompetent death row inmates may not be executed, but "*Ford*-based claims of incompetency to be executed 'remain unripe at early stages of the proceedings.'" SHCR-04 at 1282 (citing *Panetti v. Quarterman*, 551 U.S. 930, 947 (2007)). The court went on to find that there was no reason to believe that Saldaño's execution date would be set any time in the near future; thus, his claim of incompetence was premature. *Id.* Once again, the Texas Court of Criminal Appeals adopted the findings. Saldaño has not shown that, as required by 28 U.S.C. § 2254(d)(1), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Indeed, federal case law clearly supports the conclusion that Saldaño raised this issue prematurely. *See Panetti*, 551 U.S. at 947; *Stewart v. Martinez-Villareal*, 523 U.S. 637, 644-45 (1998); *ShisInday*, 511 F.3d at 521-22. The issue of whether Saldaño is incompetent to be executed becomes ripe only after an execution date is set, which has not occurred in this case, and then he must exhaust the issue in state court before raising it in federal court. *ShisInday*, 511 F.3d at 521-22. This issue is not ripe for consideration. The claim of mental incompetence should be dismissed without prejudice. *Green v. Thaler*, 699 F.3d 404, 408 (5th Cir. 2012).

**10.    Saldaño's due process rights were violated by the trial court allowing the State to present evidence which the defense did not have a meaningful opportunity to rebut.**

The tenth ground for relief relates to a statement Saldaño made to Officer Poindexter, a transportation officer, during the course of the trial. Officer Poindexter reported that Saldaño told him that he "killed three people in Oak Cliff." As would be expected, Poindexter reported the statement. The State, in turn, requested a hearing, outside of the jury's presence, to give the defense notice of the statement Saldaño allegedly made to Poindexter, in accordance with Tex. R. Evid. 404(b). The defense objected to this testimony as irrelevant and argued that the prejudicial nature of the testimony was outweighed by its probative value. Tex. R. Evid. 403. Defense counsel referred to the statement as "babble." Nonetheless, Poindexter was permitted to testify before the jury. Saldaño argues that "[a] state violates a capital defendant's right to due process under the fourteenth amendment when it uses evidence at the sentencing phase of the trial which the defendant does not have a meaningful opportunity to rebut." *Blackmon v. Scott*, 22 F.3d 560, 566 (5th Cir. 1994) (citing *Gardner v. Florida*, 430 U.S. 349 (1977) (plurality)).

The Texas Court of Criminal Appeals fully addressed the issue on direct appeal as follows:

> In point of error twenty-three, [Saldaño] again complains that "the trial court erred in overruling [Saldaño's] objection to oral statements made by [Saldaño] while he was in custody." In point of error twenty-four, [Saldaño] complains that "the trial court erred when it permitted the State to present testimony of a confession by [Saldaño] to prior murders as a prior bad act, since the State failed to name the alleged victim of the crime, or indicate when or where it occurred, and left [Saldaño] with too little time and information to respond."

> The record reflects that, as [Saldaño] was being transported back to the court house from jail after a lunch break during the punishment hearing, [Saldaño] spontaneously told a county detention officer (Poindexter) that he had "killed three people in Oak Cliff." [Saldaño] objected to the admission of this evidence on hearsay grounds. The State responded that it was a "party opponent admission" and not hearsay. The trial court overruled [Saldaño's] objection. Poindexter provided the following testimony before the jury.

Q. [STATE]: Now, on your way over back to the courtroom after lunch today, did you have a conversation with [Saldaño]?

A. [POINDEXTER]: Yes, ma'am.

Q. And what was the nature of that conversation?

A. I was asking him from where about in Argentina he was, as we were walking through the tunnel.

Q. And during the course of this conversation, did the—did [Saldaño] make any statements that alarmed you?

A. Yes, ma'am. He stated kind of in a—we were talking about Argentina, and then there was a pause, and out of nowhere he just kind of turned and looked at me and said, You know I killed three people in Oak Cliff.

We decide that the trial court did not abuse its discretion to admit this evidence. The trial court would not have abused its discretion to decide that the very fact that [Saldaño] would make such a statement (without regard to its truthfulness) in the course of his capital-sentencing proceeding would have some relevance to both special issues.

*Saldaño*, 232 S.W.3d at 104.

The ground for relief focuses, in part, on Rule 403 of the Texas Rules of Evidence. Saldaño argues that the prejudicial nature of the evidence was outweighed by its probative value. However, federal habeas corpus relief ordinarily is unavailable when a petitioner challenges an evidentiary ruling. The Fifth Circuit provided the following explanation:

Due process is implicated only for rulings "of such magnitude" or "so egregious" that they "render the trial fundamentally unfair." It offers no authority to federal courts to review the mine run of evidentiary rulings of state trial courts. Relief will be warranted only when the challenged evidence "played a crucial, critical, and highly significant role in the trial."

*Gonzales v. Thaler*, 643 F.3d 425, 430 (5th Cir. 2011).

In the present case, Saldaño's statement was a peripheral matter. He was not being tried for murders that may have been committed in Oak Cliff. The evidence was not being offered for the truth

of the matter being asserted. Instead, it was offered because he made such a statement, regardless of whether he was speaking truthfully. The Texas Court of Criminal Appeals found that the statement was admissible under these circumstances under Texas law, and the Director persuasively argued that the court should defer to the Texas Court of Criminal Appeals' determination of Texas law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998), *cert. denied*, 526 U.S. 1148 (1999); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). For purposes of federal habeas proceedings, Saldaño has not shown that the admission of the statement was improper or that the admission of the statement was so egregious that it rendered the whole trial fundamentally unfair. Moreover, as a peripheral matter, it did not play a crucial, critical and highly significant role in the trial.

The ground for relief also focuses on the Fifth Circuit's decision in *Blackmon*. Saldaño correctly notes that the Fifth Circuit held that there is a due process violation when the state uses evidence during the sentencing phase of the trial "which the defendant does not have a meaningful opportunity to rebut." *Blackmon*, 22 F.3d at 566. The statement, however, must be considered in the context in which it was made. Blackmon alleged that the State hid two witnesses and did not give him adequate access to a third. The case was remanded for development of the facts and whether the petitioner was prejudiced. *Id.* The facts of this case are entirely different. Saldaño made the statement to Poindexter during the course of the trial. Poindexter reported Saldaño's statement. The State then gave notice to the defense team about the statement. The defense had access to both Saldaño and Poindexter. There was no attempt to hide witnesses. Saldaño was not prejudiced by the State trying to hide witnesses. Saldaño was not denied a meaningful opportunity to rebut the evidence. *Blackmon* does not provide any basis for relief.

Finally, Saldaño argues that the use of a courtroom officer, Poindexter, as a witness was a perfect example of testimony that would "encourage resolution of material issues on an inappropriate

basis." *Wilson v. State*, 179 S.W.3d 240, 254 (Tex. App. - Texarkana 2005, no pet.).  He notes that

calling a bailiff as a witness involves a delicate balancing of "the extent of the bailiff's association with

the jury and the importance of the testimony."  *Reed v. State*, 974 S.W.2d 838, 840 (Tex. App. - San

Antonio 1998, pet. ref'd).  In response, the Director appropriately noted that the Supreme Court found

that a defendant's due process rights were subverted when a State's key witnesses were bailiffs who

had continuous contact with the jury during a three day trial.  *Turner v. Louisiana*, 379 U.S. 466, 473

(1965).  Years later, the Supreme Court observed that its decision in *Turner* did not establish a rigid

*per se* rule requiring an automatic reversal when a State's witness comes into contact with the jury.

*Gonzales v. Beto*, 405 U.S. 1052, 1054 (1972) (concurring opinion).  Instead, to determine whether

a defendant's due process rights were violated, a court must assess both the extent of the bailiff's

association with the jury and the importance of his testimony.  *Id.*  In *Reed*, the court found that the

defendant was not denied due process because the officer in question performed "bailiff-like" duties

in a limited capacity and had minimal contact with the jury.  *Reed*, 974 S.W.2d at 840.  In the present

case, there is no evidence that Poindexter had any association with the jury; instead, his role was

limited to transporting Saldaño back and forth between the jail and courtroom.   Furthermore,

Poindexter was not a key witness.  Saldaño was not denied due process under these circumstances.

He is not entitled to federal habeas corpus relief on his tenth ground for relief.

### 11.    The trial court's failure to allow evidence of the co-defendant's life sentence as mitigating evidence violated Saldaño's constitutional rights.

In his eleventh ground for relief, Saldaño complains that he was not permitted to present

evidence that co-defendant Chavez received a life sentence.  He noted that a sentencer in a capital case

must not be precluded from considering, "as a mitigating factor, any aspect of a defendant's character

or record and any of the circumstances of the offense that the defendant proffers as a basis of a

sentence less than death." *Lockett*, 438 U.S. at 604. The Supreme Court subsequently reiterated that evidence, even if not "relate[d] specifically to the petitioner's culpability for the crime he committed" must be treated as relevant mitigating evidence if it serves "as a basis for a sentence less than death." *Skipper v. South Carolina*, 476 U.S. 1, 4-5 (1986) (citing *Lockett*, 438 U.S. at 604). Later still, the Court specified that "States cannot limit the sentencer's consideration of any relevant evidence that could cause it to decline to impose the death penalty." *McCleskey v. Kemp*, 481 U.S. 279, 306 (1987). Saldaño argues that the case law supports his claim that he was entitled to submit evidence that his co-defendant received a life sentence as mitigating evidence. *See Parker v. Dugger*, 498 U.S. 308, 314 (1991); *Lankford v. Idaho*, 500 U.S. 110 (1991); *Bolender v. Singletary*, 16 F.3d 1547, 1565 n.27 (11th Cir. 1994).

The case law, however, does not support Saldaño's claim. In *Lockett*, the Supreme Court added that "[n]othing in this opinion limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." 438 U.S. at 604 n. 12. The Fifth Circuit has repeatedly held that evidence of a co-defendant's lesser sentence does not amount to constitutionally relevant mitigating evidence. *Miniel v. Cockrell*, 339 F.3d 331, 337 n.1 (5th Cir. 2003) (citing *United States v. Ives*, 984 F.2d 649, 650 (5th Cir. 1993)); *Cordova v. Johnson*, 157 F.3d 380, 383-84 (5th Cir. 1998); *Brogdon v. Blackburn*, 790 F.2d 1164, 1169 (5th Cir. 1986). The Director also appropriately pointed out that Saldaño's reliance on *Parker* is misplaced. The Supreme Court merely found that the Florida courts had not considered all of the mitigating evidence in the record. *Parker*, 498 U.S. at 322-23. There was no requirement that the co-defendant's lesser sentence be considered.

On direct appeal in this case, Saldaño argued that the rule in Texas precluding the introduction of such evidence was impliedly overruled by *Tennard v. Dretke*, 542 U.S. 274 (2004). In *Tennard*,

the Supreme Court reiterated that "a State cannot preclude the sentencer from considering 'any relevant mitigating evidence' that the defendant proffers in support of a sentence less than death. . . . [V]irtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances." *Tennard*, 542 U.S. at 285 (quoting *Eddings v. Oklahoma*, 455 U.S. 104, 114 (1982)). The Texas Court of Criminal Appeals appropriately observed that "these cases still require that the proffered evidence relate to the defendant's '*own* circumstances.'" *Saldaño*, 232 S.W.3d at 100 (emphasis added). The decision was in accordance with current case law. Neither Texas nor Fifth Circuit case law entitles a defendant to introduce evidence of a co-defendant's lesser sentence as mitigating evidence. The eleventh ground for relief lacks merit.

### 12. The Texas death penalty statute is unconstitutional because it allows a jury unbridled discretion to determine who should live or die.

Saldaño argues in his twelfth ground for relief that the Texas death penalty statute under which he was convicted is unconstitutional because it allows a jury unbridled discretion in determining who should live or die. He opines that the evolution of the death penalty has come full circle because, under the present Texas statute as applied to him, the jury has once again been given unfettered discretion that both invites and permits arbitrary application of the ultimate penalty. *Cf. Gregg v. Georgia*, 428 U.S. at 189.

Saldaño's argument, however, has been repeatedly rejected by the Fifth Circuit. The Supreme Court distinguished between two aspects of the capital sentencing decision; more specifically, the eligibility decision and the selection decision, in *Tuilaepa*, 512 U.S. at 971-72. The Court has upheld the constitutionality of Texas' procedures for determining the existence of aggravating circumstances to make eligibility decisions. *See Jurek*, 428 U.S. at 276. In making the selection decision, the jury must be allowed to make "an *individualized* determination" by considering "relevant mitigating

evidence of the character and record of the defendant and the circumstances of the crime." *Tuilaepa*, 512 U.S. at 972. A jury "may be given 'unbridled discretion in determining whether the death penalty should be imposed after it has found that the defendant is a member of the class made eligible for that penalty.'" *Id.* at 979-80 (quoting *Zant v. Stephens*, 462 U.S. 862, 875 (1983)). Citing *Tuilaepa*, the Fifth Circuit has regularly rejected complaints that juries in Texas have unbridled discretion to determine who should live or die. *See, e.g., Turner*, 481 F.3d at 299; *Woods v. Cockrell*, 307 F.3d 353, 359 (5th Cir. 2002); *Moore v. Johnson*, 225 F.3d 495, 506-07 (5th Cir. 2000) ("Texas followed Supreme Court instructions to the letter"), *cert. denied*, 532 U.S. 949 (2001). More recently, since Saldaño filed his brief in this case, the Fifth Circuit rejected an identical claim raised by his current attorney in *Adams v. Thaler*, 421 F. App'x 322, 337 (5th Cir.), *cert. denied*, 132 S. Ct. 399 (2011). The ground for relief lacks merit.

13. **The Texas death penalty statute, which instructs the jury that ten of them must agree in order to answer special issue no. 1 with a "no" answer, is unconstitutional because it fails to inform jurors that the effect of the jury's failure to reach a unanimous verdict on any issue at the punishment phase would result in a life sentence.**

Saldaño next argues that the Texas capital punishment scheme is unconstitutional because it fails to inform the jury about the effect of a non-unanimous verdict on the special sentencing issues. He contends that the Eighth and Fourteenth Amendments require jurors to be instructed that a life sentence is automatically imposed if the jury is unable to respond unanimously to the special issues. Saldaño relies on the Supreme Court's decisions in *Mills v. Maryland*, 486 U.S. 367 (1988), and *McKoy v. North Carolina*, 494 U.S. 433 (1990). The Fifth Circuit, however, has repeatedly rejected such arguments. *See, e.g., Dreury v. Thaler*, 647 F.3d 535, 542-43 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 1550 (2012); *Hughes v. Dretke*, 412 F.3d 582, 594 (5th Cir. 2005), *cert. denied*, 546 U.S. 1177 (2006); *Miller v. Johnson*, 200 F.3d 274, 288-89 (5th Cir.), *cert. denied*, 531 U.S. 849 (2000). More

recently, since Saldaño filed his brief in this case, the Fifth Circuit rejected an identical claim raised by his current attorney in *Adams*, 421 F. App'x. at 335. Relief on this claim is foreclosed by Fifth Circuit precedent. The thirteenth ground for relief lacks merit.

14.     **The State's failure to provide meaningful appellate review of the sufficiency of the evidence to support the jury's verdict concerning mitigating evidence violates Saldaño's constitutional rights.**

Saldaño next complains that the Texas Court of Criminal Appeals has rejected every opportunity to review a challenge to the sufficiency of the evidence to support a negative answer to the mitigation special issue. On direct review in this case, the Texas Court of Criminal Appeals declined Saldaño's "invitation to review" its past decisions on the issue. *Saldaño*, 232 S.W.3d 108-09. Saldaño acknowledges that his argument was rejected by the Fifth Circuit in *Rowell v. Dretke*, 398 F.3d at 378. He states that he is raising the claim in order to preserve it in the event he is granted a new sentencing hearing in order to present his mitigating evidence. The Court notes that the Fifth Circuit has rejected the claim in several cases in addition to *Rowell*. *See, e.g.*, *Woods*, 307 F.3d at 359-60; *Moore*, 225 F.3d at 506-07. Moreover, the Fifth Circuit rejected the identical claim presented by Saldaño's current attorney in *Adams*, 421 F. App'x at 336-37. Relief on this claim is foreclosed by Fifth Circuit precedent. The fourteenth ground for relief lacks merit.

15.     **The cumulative effect of these constitutional violations denied Saldaño due process of law, even if no separate infraction by itself rose to that magnitude.**

Saldaño's final ground for relief is a cumulative error claim. He argues that the constitutionality of a trial can be compromised by a series of events none of which individually violated his constitutional rights. The ground for relief must be rejected for two reasons. First of all, the claim is unexhausted and procedurally barred. Saldaño has not shown cause and prejudice or a fundamental miscarriage of justice in order to overcome the procedural bar. Saldaño referenced the

Supreme Court's decision in *Trevino*, but he failed to show that the standards announced in *Martinez* and *Trevino* apply in this case. More specifically, he failed to show underlying claims of ineffective assistance of counsel that are substantial and that his initial state habeas counsel was ineffective for failing to present those claims in his first state habeas application.

The ground for relief must be rejected for the additional reason that the Fifth Circuit has regularly rejected cumulative error claims while noting that federal habeas relief is available only for cumulative errors that are of constitutional dimension. *Coble v. Quarterman*, 496 F.3d 430, 440 (5th Cir. 2007); *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir.), *cert. denied*, 522 U.S. 880 (1997); *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993). The Fifth Circuit has emphasized that "[m]eritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised." *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (citing *Derden v. McNeel*, 978 F.2d 1453, 1461 (5th Cir. 1992)), *cert. denied*, 519 U.S. 1094 (1997). Saldaño has not shown a violation of his constitutional rights based on cumulative errors. He has not shown that he is entitled to relief based on his final claim.

In conclusion, Saldaño has not shown that he is entitled to federal habeas corpus relief. The petition for a writ of habeas corpus should be denied.

## VI. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Saldaño has not yet filed a notice of appeal, the court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made

a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of Saldaño's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, the court finds that Saldaño is not entitled to a certificate of appealability as to his claims. It is accordingly

**ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the case is **DISMISSED** with prejudice. It is further

**ORDERED** that Saldaño's claim that he is presently incompetent and may not be executed is premature and **DISMISSED** without prejudice. It is further

**ORDERED** that a certificate of appealability is **DENIED**.  It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

**SIGNED this 18th day of July, 2016.**


_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE